IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

DANIEL NOTESTEIN, BLOCKTRADES
INTERNATIONAL, LTD., ANDREW
CHANEY, SZYMON LAPINSKI, ADAM
DODSON, ELMER LIN, DANIEL HENSLEY,
MICHAEL WOLF, MATHIEU GAGNON, and
MARTIN LEES,

       Plaintiffs/Counter-
       Defendants,

 v.            Civil Action No. 7:20CV00342

BITTREX, INC.,

       Defendant/Counter-
       Plaintiff
J. DOES, and

       Defendants

STEEMIT, INC.

       Third-Party
       Defendant

**MEMORANDUM IN SUPPORT OF MOTION TO DEPOSIT DISPUTED
CRYPTOCURRENCY INTO THE COURT REGISTRY**

   Defendant/Counter-Plaintiff Bittrex Inc. ("Bittrex"), by counsel, pursuant to 28 U.S.C. § 1335(a)(2) and Federal Rule of Civil Procedure 67, files this memorandum in support of its motion to deposit certain Steem and Steem-Backed Dollars, two types of cryptocurrencies, into the court registry. As discussed in Bittrex's Answer, Counterclaim, and Third-Party Claim for Interpleader, Bittrex, a Washington State-based cryptocurrency exchange platform, currently has possession of approximately 7 million units of Steem and approximately 250 Steem-Backed Dollars (collectively, the "Disputed Steem") over which Plaintiffs/Counter-Defendants and Third-Party Defendant Steemit, Inc. claim ownership. Bittrex asserts no claim over the Disputed Steem and is ready and willing to provide the Disputed Steem to its rightful owner. However, as

a result of the dispute, Bittrex is unable to make a determination as to ownership without potentially exposing itself to double or multiple liability. Interpleader is thus the appropriate remedy. While Bittrex expects that this Court has not previously been asked to take custody over cryptocurrency, Bittrex is confident that there is a method by which the Disputed Steem can be appropriately held for safekeeping while this dispute is resolved.

## I. FACTUAL BACKGROUND

### A. Cryptocurrency Background

Bittrex expects that a brief background on cryptocurrency will be relevant to the Court's understanding of the dispute and evaluation of this Motion.

#### 1. Blockchain Technology and Cryptocurrencies

A blockchain is a form of a digital ledger maintained by a distributed network of computers, rather than a single central party. Declaration of Julian Yap ("Yap Declaration") ¶ 3. Participants in the network—called "nodes"—broadcast transactions to the network and the nodes validate the transactions. *Id*. Periodically, the computers on the network aggregate valid transactions into a "block" (i.e. a group of transactions) and write the block to the ledger. *Id*. Through the use of cryptography, each block relates back to the previous block forming an interconnected chain (hence, the term "blockchain"). *Id*. The end result is that data written to the blockchain is (practically) immutable—i.e. it cannot be deleted. *Id*.

Cryptocurrencies—also known as "digital currencies" or "virtual currencies"—are digital assets that often implement blockchain technology, and there are many blockchain-based cryptocurrencies currently in existence. *Id*. ¶ 4. Some cryptocurrencies—such as Bitcoin—are designed as general-purpose mediums-of-exchange, while others are designed for use within a specific ecosystem or platform. *Id*. Despite the differences in purposes and technical design, each type of blockchain-based cryptocurrency shares similarities. *Id*. ¶ 5. First, cryptocurrencies do

not exist in any physical form. *Id*. Second, individual coin ownership records are stored on the blockchain, which records the creation of units of each cryptocurrency and tracks their transfer. *Id*. ¶ 5. Steem and Steem-Backed Dollars, the cryptocurrencies at issue in this case, use blockchain technology. *Id*. ¶ 6.

### 2. Holding and Transferring Cryptocurrency

Though each cryptocurrency's blockchain tracks the ownership of all existing cryptocurrency, it does not track the ownership using the names of individual users. *Id*. ¶ 7. Instead, blockchains generally use digital "addresses." *Id*. Each cryptocurrency user has one or more digital "addresses" that are used to transact in cryptocurrency. *Id*. While in many blockchains each transaction associated with a particular address is public and auditable, the blockchain does not record the name of the individual or entity that controls each address. *Id*.

Unlike traditional banks, where each customer has a bank account and is identified as the owner, control of cryptocurrency is attested primarily through control of cryptographic "keys." *Id*. ¶ 8. The most important cryptographic key is the "private key." *Id*. A private key is a long string of alpha-numeric text that functions similarly to a password for a conventional bank account. *Id*. Without access to the applicable private key, cryptocurrency cannot be transferred. *Id*.

### 3. Cryptocurrency "Wallets"

A cryptocurrency wallet is a device, program, service or physical medium, comparable to a bank account, that stores the private keys used to transfer cryptocurrencies like Steem or Steem-Backed Dollars. *Id*. ¶ 9. Bittrex maintains a Steem wallet on the Steem blockchain which serves as a holding account for all of the Steem and Steem-Backed Dollars held on Bittrex's

WOODS ROGERS PLC
ATTORNEYS AT LAW

exchange by Bittrex customers. *Id*. A Steem wallet is akin to a digital "address" where Steem and Steem-Backed Dollars can be sent or received. *Id*.

### B. Bittrex Background

Founded in 2014, Bittrex is a U.S.-based cryptocurrency exchange. *Id*. ¶ 10. A cryptocurrency exchange business allows customers to trade cryptocurrencies for other assets, such as conventional fiat money or other digital currencies. *Id*. Bittrex is headquartered in Washington State. *Id*. Bittrex is one of the largest U.S.-based cryptocurrency exchanges. *Id*. Bittrex was founded by three cybersecurity professionals and, as a result, Bittrex's wallet infrastructure has been designed with security in mind. *Id*. ¶ 11.

To use Bittrex, customers create a Bittrex account and undergo identity verification. *Id*. ¶ 12. Once the customer has created their account and had their identity verified, customers send cryptocurrency to a Bittrex-controlled deposit address (i.e. one in which Bittrex controls the address's private keys). *Id*. If the deposit is successful, Bittrex credits the customer's account with the appropriate amount of cryptocurrency. *Id*. The customer can use that balance to trade the cryptocurrency for another type of cryptocurrency or, in certain markets, fiat currency. *Id*.

Customers generally access their account by inputting their email address and password on Bittrex's website, available at https://bittrex.com, or the Bittrex mobile application. *Id*. ¶ 13. To mitigate the risk of unauthorized account access if customers lose their login credentials, Bittrex has implemented a number of security measures. *Id*. ¶ 14. First, Bittrex requires customers to verify certain actions before they can access their account. *Id*. For instance, if Bittrex detects that the customer is attempting to login from an unknown IP address (i.e. one not previously associated with the customer's account), Bittrex sends the customer an email that contains a verification link. *Id*. Bittrex blocks the unknown IP address from accessing the

WOODS ROGERS PLC
ATTORNEYS AT LAW

customer's account until the verification link in the email is clicked. *Id*. Second, Bittrex allows customers to create a list of approved IP addresses, thereby blocking non-approved IP addresses from trading or withdrawing cryptocurrencies in the account. *Id*. Third, Bittrex offers app-based two-factor authentication, which, if enabled, requires the customer to input a rotating code generated by a third-party application to gain access to the account, in addition to supplying the email address and password associated with the account. *Id*.

C.     **Background on the Steem Dispute**

Steem and Steem-Backed Dollars are two of many cryptocurrencies traded on Bittrex's exchange. Yap Decl. ¶ 15. Bittrex's understanding is that Defendant Steemit, Inc. owns or owned Steemit, a blockchain-based blogging and social media platform. Dkt. 7 ¶ 19. Steemit users are rewarded with the cryptocurrency Steem and/or Steem-Backed Dollars for publishing and curating content. *Id*. In early 2020, the TRON Foundation and Defendant Steemit, Inc. engaged in a transaction by which the TRON Foundation gained control of the Steemit social media and blogging platform. Dkt. 7 ¶ 20, Yap Decl. ¶ 17. The transaction caused various conflicts amongst holders of Steem-related cryptocurrency. *Id*. In May 2020, these conflicts culminated in a "hard fork," i.e., a change in the rules governing the Steem "blockchain." Dkt. 7 ¶ 21, Yap Decl. ¶ 17. In the cryptocurrency community, the "hard fork" was considered contentious, as it transferred the Steem and Steem-Backed Dollars held by certain Steem accounts to a Steem account named "community321." Yap Decl. ¶ 17. Bittrex was generally aware of this conflict but had no involvement in the conflict itself. *Id*.[1]

---

WOODS ROGERS PLC
ATTORNEYS AT LAW

[1] *See generally*, "Binance CEO Admonishes Justin Sun Over Steem Fiasco," dated March 6, 2020, *available at* https://cointelegraph.com/news/binance-ceo-admonishes-justin-sun-over-steem-fiasco-transparency-works; "Mystery Account 'Rescues' $6M of STEEM from Hard Fork Seizure," dated May 21, 2020, *available at* https://cointelegraph.com/news/mystery-account-rescues-6m-of-steem-from-hard-fork-seizure.

On May 20, 2020, following the "hard fork," 23,627,501 Steem and 427 Steem-Backed Dollars was transferred from the "community321" account into Bittrex's Steem wallet (which, as noted above, serves as a holding account for all of the Steem and Steem-Backed Dollars held on Bittrex's exchange by Bittrex customers) by an unknown person purporting to be a "white knight hacker." Yap Decl. ¶ 18. The unknown "white knight hacker" purported to instruct Bittrex to return the cryptocurrency to their "original owners," but did not provide an identifying memorandum by which Bittrex could link the funds to a particular Bittrex account. *Id*. It is unclear whether the "white knight hacker" engaged in criminal activity in obtaining the funds from the "community321" account.

Plaintiffs/Counter-Defendants have informed Bittrex that they are the owners of at least 6,999,300 of the Steem and 250 of the Steem-Backed Dollars transferred from the "community321" account to the Bittrex Steem wallet. Declaration of Kevin Hamilton ¶¶ 3-5.[2] However, Bittrex's counsel recently corresponded with counsel for Third-Party Defendant Steemit, Inc., who instructed Bittrex not to release the Disputed Steem to Plaintiffs/Counter-Defendants. Declaration of Claire Martirosian ("Martirosian Decl.") ¶ 2. Steemit, Inc.'s counsel informed Bittrex that the Disputed Steem was stolen by the "white knight hacker," and Plaintiffs/Counter-Defendants were potentially involved in and/or connected to the actions of the purported "white knight hacker." *Id*.

Given that the Disputed Steem was transferred as a result of the actions of a purported hacker and there is a dispute as to whether or not the Disputed Steem was stolen, Bittrex has

---

[2] Only certain of Plaintiffs/Counter-Defendants have provided information to Bittrex that purports to show their claim to ownership of some portion of the Steem and Steem-Backed Dollars deposited into Bittrex's Steem wallet by the "white knight hacker." Hamilton Decl. ¶¶ 3-5. It is not clear from the Complaint what portion of the total 23,627,501 Steem and 427 Steem-Backed Dollars Plaintiffs/Counter-Defendants claim to be entitled. In order to identify the Steem and Steem-Backed Dollars that are properly the subject of this interpleader action, Bittrex requests that the remaining Plaintiffs/Counter-Defendants provide Bittrex with information purporting to identify the Steem/Steem-Backed Dollars to which they claim to be entitled.

WOODS ROGERS PLC
ATTORNEYS AT LAW

informed Plaintiffs/Counter-Defendants that, pursuant to its pre-existing policy, Bittrex will not release the Disputed Steem until it receives (a) a settlement agreement signed by all parties asserting a claim to the Disputed Steem, or (b) valid and final court order or order from law enforcement demanding release of the Disputed Steem. Dkt. 7 ¶ 25, Hamilton Decl. ¶ 6.

Bittrex does not assert any claim to the Disputed Steem. Dkt. 7 ¶ 26; Yap Decl. ¶ 19. Bittrex is ready and willing to give the Disputed Steem to the person or persons entitled to it, but Bittrex is unable to make a determination as to ownership without potentially exposing itself to double or multiple liability. Dkt. 7 ¶ 25; Yap Decl. ¶ 19.

## II. ARGUMENT

### A. The Requirements Of 28 U.S.C. § 1335 Are Met

Interpleader actions protect stakeholders from the expense of multiple litigation and multiple liability. *Reliastar Life Ins. Co. of New York v. LeMone*, No. CIV.A. 7:05CV00545, 2006 WL 733968, at *2 (W.D. Va. Mar. 16, 2006), citing *Equitable Life Assurance Soc. v. Jones*, 679 F.2d 356, 358 (4th Cir. 1982); 7 Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 1702 (3d ed. 2001). An interpleader action may be brought under 28 U.S.C. § 1335 if the amount in controversy is $500 or more, diversity exists between any two contending claimants, and if the stakeholder has deposited the money or property at issue into the court. 28 U.S.C. § 1335.

The requirements of Section 1335(a) are met because Bittrex has possession of the Disputed Steem, which Plaintiffs/Counter-Defendants allege has a value in excess of $500. *See generally* Dkt. 1. Further, there are at least two adverse claimants of diverse citizenship as defined in 28 U.S.C. § 1332 who are claiming or may claim to be entitled to the Disputed Steem—Plaintiffs/Counter-Defendants are residents of Virginia, Louisiana, and various foreign jurisdictions (*see* Dkt. 1 ¶¶ 1-11) and Third-Party Defendant Steemit, Inc. is a Delaware

corporation with its principal place of business in Austin, Texas. *See State Farm Fire & Casualty Co. v. Tashire*, 386 U.S. 523, 530 (1967) (noting that Section 1335(a)(1) requires "only minimal diversity.") Bittrex now seeks to deposit the Disputed Steem into the court registry pursuant to 28 U.S.C. § 1335(a)(2), which advises interpleader plaintiffs to "deposit[] such money or property . . . into the registry of the court, there to abide the judgment of the court[.]"

### B. Bittrex Should be Permitted to Deposit the Disputed Steem into the Court Registry

Federal Rule of Civil Procedure 67(a) provides, in relevant portion, that where "any part of the relief sought is a money judgment or the disposition of a sum of money or some other deliverable thing, a party – on notice to every other party and by leave of court – may deposit with the court all or part of the money or thing[.]" Bittrex seeks to comply with the requirements of Rule 67(a) and 28 U.S.C. § 1335(a)(2) by depositing the Disputed Steem into the court registry, thereby providing the Court with control over the distribution of the Disputed Steem.

Bittrex recognizes that depositing cryptocurrency into the court registry is novel when compared to the deposit of the typical subject of an interpleader action—for example, the proceeds of a life insurance policy. However, Bittrex is confident there is a method of deposit that will allow the Disputed Steem to be properly kept for safekeeping. Bittrex proposes that it work with the Court to establish a new Bittrex account in the Court's name, credit the Disputed Steem to the Court's Bittrex account, and print out the login credentials for the Court. Yap Decl. ¶ 20. Bittrex will then provide the Bittrex login credentials in a sealed envelope to the Court to place in the Court's registry. *Id*. Bittrex will not retain a copy of this information. *Id*. The Court can then maintain this information in its registry while this dispute is pending. *Id*. No Plaintiff/Counter-Defendant, John Doe Defendant, Third-Party Defendant, or other interested third party will be able to withdraw the Disputed Steem from the Bittrex account without the

proper login credentials.. *Id*. Once this action has been resolved, the Court can use the login credentials to transfer the Disputed Steem. This will essentially be akin to keeping physical property in the Court's registry for safekeeping. *See, e.g., Wertheimer v. Bank of Nova Scotia*, 140 F. Supp. 950, 953 (S.D.N.Y. 1956) (allowing party seeking interpleader relief regarding disputed stock to deposit stock certificates); *see also State Farm*, 386 U.S. at 530 (noting that the legislature intended the interpleader statute to be construed "broadly to remedy the problems posed by multiple claimants to a single fund.").

While Bittrex believes this to be the simplest and most effective method to ensure safekeeping of the Disputed Steem while this dispute is pending, Bittrex is open to alternative solutions acceptable to the Court. For example, Bittrex is open to using a third-party custodian to hold the Disputed Steem while this dispute is pending, if an appropriate custodian can be found. Yap Decl. ¶ 21. Bittrex could also create an account on Steemit, direct the Disputed Steem to that address, and provide the "private key" associated with that account to the Court in a sealed envelope to keep in its registry. *Id*. Ultimately, Bittrex simply wants to find the most expedient way to allow the claim to the Disputed Steem to be resolved without subjecting itself to litigation.

### III. CONCLUSION

Bittrex respectfully requests that the Court accept the Disputed Steem from Bittrex and allow it to be deposited into the court registry, such that Bittrex can be dismissed from a dispute in which it has no interest.

Respectfully submitted,

**BITTREX, INC.**

By: /s J. Benjamin Rottenborn
      Of Counsel

Gregory J. Hollon, WSBA No. 26311
*(pro hac vice pending)*
Claire Martirosian, WSBA No. 49528
*(pro hac vice pending)*
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101
Phone: (206) 467-1816
Fax:　 (206) 624-5128
ghollon@mcnaul.com
cmartirosian@mcnaul.com

J. Benjamin Rottenborn (VSB No. 84796)
WOODS ROGERS PLC
P.O. Box 14125
10 South Jefferson Street, Suite 1400
Roanoke, Virginia 24011
Telephone: (540) 983-7540
brottenborn@woodsrogers.com

*Counsel for Defendant Bittrex, Inc.*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a true and correct copy of the foregoing was served via the CM/ECF system on the individuals listed below on August 4, 2020:

Michelle C. F. Derrico, Esq. (VSB 34037)
Richard L. Derrico, Esq. (VSB 33442)
Copenhaver, Ellett & Derrico
30 Franklin Road, SW, Suite 200
Roanoke, VA 24011
(540) 343-9349
(540) 342-9258 Facsimile
michelle@cecd.roacoxmail.com
rick@cecd.roacoxmail.com

*Counsel for Plaintiffs*

/s J. Benjamin Rottenborn
Counsel for Defendant

WOODS ROGERS PLC
ATTORNEYS AT LAW

Page **11** of **11**