IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DANIEL NOTESTEIN, | ) | |
| BLOCKTRADES INTERNATIONAL, LTD., | ) | |
| ANDREW CHANEY, | ) | |
| SZYMON LAPINSKI, | ) | |
| ADAM DODSON, | ) | |
| ELMER LIN, | ) | |
| DANIEL HENSLEY, | ) | |
| MICHAEL WOLF, | ) | |
| MATHIEU GAGNON, and | ) | |
| MARTIN LEES | ) | |
| | ) | |
| Plaintiffs | ) | Civil Action No.: 7:20-cv-000342 |
| | ) | |
| v. | ) | |
| | ) | |
| BITTREX, INC., | ) | |
| and | ) | |
| J. DOE | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| and | ) | |
| | ) | |
| STEEMIT, INC. | ) | |
| | ) | |
| Third-Party Defendants | ) | |

**MEMORANDUM IN OPPOSITION TO MOTION TO DEPOSIT OF BITTREX, INC.**

**I. BITTREX, INC. CANNOT MAKE A GOOD FAITH CLAIM OF POTENTIAL DOUBLE EXPOSURE TO LIABILITY.**

**A. There is no conflicting claim.**

Bittrex, Inc. has not and cannot identify a person or entity other than the Plaintiffs that has made a claim of ownership to Plaintiffs' Steem. Its Counterclaim makes no effort to do so. In a pleading subsequently filed, counsel for Bittrex, Inc. states counsel for Steemit, Inc. desires the Steem not be released to the Plaintiffs. This loose statement cannot possibly be interpreted as a

claim of ownership or serve as a reasonable concern of double exposure, especially when the Counterclaim specifically states these potential claimants will not authorize their identification.

"[W]hile a conflicting claim to property need not be concrete and final for a stakeholder to initiate an interpleader action, it cannot be based on the Court's speculation. It at least must be in the Complaint. It is not." Madison Stock Transfer, Inc. v. Exlites Holdings Int'l, Inc. 368 F.Supp.3d 460, 477 (E.D.N.Y. 2019). Madison Stock involved shares of stock which were issued, and where the issuance was followed by a cancellation order. The parties to whom the shares were issued did not appear or object to the cancellation. Accordingly, the court found, while it might be presumed the receiving parties would object to the cancellation, their failure to come forward and state their desire in public could not serve as the basis for a reasonable concern about double liability by the petitioner. Those parties were at least identified by name, unlike the instant case.

Dunbar v. U.S., 502 F.2d 506 (5th Cir 1974) is analogous to this case. Dunbar involved a package containing $21,500 in cash that was mailed to a law firm. The package bore Mr. Dunbar's name in the return address. The law firm turned the package over to the United States Attorney, who forwarded it to the FBI. The FBI became frustrated when Dunbar would not identify the source of the cash. The FBI filed a complaint for interpleader naming Dunbar, the law firm, and "all absent, unknown persons having or claiming any right, title or interest in and to the subject matter funds". Id., at 509. As expected, the law firm answered with a denial of any claim to the funds. The Fifth Circuit referred to the inclusion of the law firm as a "charade" and stated,

> we are left with an interpleader action in which the United States is the stakeholder, and the plaintiff and untold numbers of "absent, unknown persons" are the conflicting claimants. To support this action, we are presented with a record in which the plaintiff has made a claim to the disputed fund that has been

> controverted only by the doubts of the United States as to the authenticity of the plaintiff's claim, doubts apparently innocent of any factual basis."
>
> *****
>
> Not only has no party come forward with such a claim, but the FBI has failed to ferret out any potential claimants and sans such ferreting we are at a loss to adopt its position. A tender solicitude that the currency be given to its rightful owner merits our respect, but cannot in itself furnish any justification for assuming the plaintiff is an interloper whose entitlement must be proved against the world.

Id., at 510, 511. The Fifth Circuit refers to the FBI's position that some unknown person might come forward to make a claim as "factual arrogance". Id. It is the same sort of factual arrogance on the part of Bittrex, Inc. when it makes an identical claim in the case before this Court.

In Paragraph 24 of its Counterclaim, Bittrex, Inc. admits no other claimants are willing to identify themselves. ECF 7, Answer and Counterclaim, p. 11. Plaintiffs submit Bittrex, Inc. cannot get anyone other than the Plaintiffs to make a claim of ownership because to do so would admit the claimant's complicity in the thwarted attempt to steal Plaintiff's property. As of the time of the filing of Bittrex, Inc.'s Motion, no conspirator has been willing to make that admission.

**B. There is no bona fide fear of exposure to double liability.**

Counsel for Bittrex, Inc. asserts Steemit, Inc. does not want the property returned to the Plaintiffs because someone unknown may have "stolen" the funds, and it is possible the Plaintiffs knew something about the act. ECF 15-3, Declaration of Claire Martirosian. When Bittrex, Inc. received the funds, it knew the funds were stolen property, in part because the accompanying message stated it outright, "These are funds stolen by the Steem witnesses using HF23 May 20th 2020 - please return them to their original owners prior to the fork :)". https://steemd.com/@community321?page=3. An unknown entity interrupted that theft. Bittrex, Inc. is troubled by a potential theft that interrupted an actual theft.

If we were to assume *arguendo* that whoever delivered the community321 account to

3

Bittrex, Inc. committed an act of theft, they did so in order to thwart the theft of the property from the rightful owners, the Plaintiffs. If the Plaintiffs were in fact involved in this action, they would have been within their rights to recover their property.

All of the Plaintiffs deny they were involved in the transfer to Bittrex, Inc. Furthermore, simple logic supports their denial. If the Plaintiffs had been involved in the transfer, it would have included a memo describing the apportionment of ownership. *See* Declarations of Plaintiffs, attached.

If there were in fact claimants adverse to the Plaintiffs, Bittrex, Inc. is not obligated to choose between the merit of their claims, and interpleader may be appropriate. Bierman v. Marcus, 246 F.2d.200, 202 (3rd Cir. 1957). However, an adverse claim "may be so wanting in substance that interpleader under the statute may not be justified". Id., *citations omitted*. There must be a bona fide concern of double liability. Newkirk Constr. Corp. v. Gulf County, 366 So.2d 813 (Fla. App. 1979). The desire of an attorney for Steemit, Inc., expressed to counsel for Bittrex, Inc., to withhold the community321 account from its rightful owners is not even a claim, let alone a bona fide or credible claim.

## II. BITTREX, INC. CANNOT SECURELY PAY THE CRYPTOCURRENCY INTO THE COURT REGISTRY.

The community321 account was created when Steem and Steem-backed Dollars were seized from a number of Steem accounts, several of which were owned by the Plaintiffs. This was accomplished by modifying the software which operates the Steem cryptocurrency network. When the funds from the community321 account were diverted to Bittrex, Inc., they were deposited into the bittrex account, an account in which Bittrex, Inc. holds the funds of all of its depositors. From the outside, the bittrex account is indivisible: although Steemit, Inc. can determine how much Steem the bittrex account holds, it cannot tell who owns the funds: it can

only see how much total Steem that Bittrex holds in custody for its customers. Declaration of Daniel Notestein, attached.

If Bittrex, Inc. were to create a new account for the Court registry, there would be two ways to do so. One method would be to create a sub-account within the bittrex account, using Bittrex's internal accounting system. Although this method would protect the contents from outside confiscation, the funds would still be contained within the bittrex account and would remain under the ultimate control of Bittrex, Inc. Id.

The second method of creating an account for the Court registry would be to create a new Steem account, separate from the bittrex account. This would expose the funds to the same type of attempt at seizure that was interrupted by the anonymous transfer to Bittrex, Inc. There is no way the Court registry could maintain the security of funds under these conditions. Id.

In addition, although Bittrex promises it will not keep a copy of the cryptographic keys for this new Steem account, there is only one way to assure no other party would have access to the account. That would be for the Court to create a new set of cryptographic keys and replace the old ones set by Bittrex. If this process were done improperly, the contents of the account could be lost permanently with no method of recovery. Id.

Bittrex, Inc. proposes to create a Bittrex account in the name of the Court registry and to deposit the community321 funds in that account. On one hand, the Court account would be secure within the indivisible bittrex account, control of the account would still be with Bittrex, Inc. Prudential Ins. Co. of America v. Bank of Commerce, 857 F.Supp. 62 (D. Kan 1994) was a case in which Prudential wished to satisfy the jurisdictional requirements of deposit into the court registry in part cash and part bond. Prudential intended to self-surety the bond. The court found, even though Prudential was on the list of approved sureties for the court, it was also an

interested party, since there were claims against it outside of the payment of the policy proceeds. This is the situation in the instant case, where the Plaintiffs have requested compensation for the damages caused them by Bittrex, Inc. The Kansas court found the rights of the claimants could not be fully protected if the bond was carried by the party from whom they sought relief.

Bittrex, Inc. seeks to place the funds into the court registry by creating an account which it would then hold. This does not remove the funds from the control of Bittrex, Inc. The court should decline this request.

Bittrex, Inc. then suggests creating a non-Bittrex account and placing the funds there. If Bittrex, Inc. were to create an account with Steemit, as it suggests, it would place the funds back in the control of the original thieves and allow them to complete the theft. An order by this Court to leave the funds intact would not be effective against a party no one has been able to identify and who is very possibly located in another country.

WHEREFORE, the Plaintiffs pray this Court deny the Motion to Deposit, dismiss the Counterclaim filed by Bittrex, Inc, and award the Plaintiffs their costs, expenses and reasonable attorneys' fees.

Respectfully submitted this 18th day of August, 2020,

    DANIEL NOTESTEIN
    BLOCKTRADES INTERNATIONAL, LTD.
    ANDREW CHANEY
    SZYMON LAPINSKI
    ADAM DODSON
    ELMER LIN
    DANIEL HENSLEY
    MICHAEL WOLF
    MATHIEU GAGNON
    MARTIN LEES

By: __s/Michelle C. F. Derrico_____
    Of Counsel

Michelle C. F. Derrico, Esq. (VSB 34037)
Richard L. Derrico, Esq. (VSB 33442)
Copenhaver, Ellett & Derrico
30 Franklin Road, SW, Suite 200
Roanoke, VA  24011
(540) 343-9349
(540) 342-9258 facsimile
michelle@cecd.roacoxmail.com
rick@cecd.roacoxmail.com
    Counsel for the Plaintiffs

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing Memorandum in Support of Motion to Dismiss was served via CM/ECF system, which will send notification of such filing all counsel of record, this 18th day of August, 2020.

    _____/s/ Michelle C. F. Derrico_____
        Of Counsel