## DECLARATION OF DANIEL NOTESTEIN

I, Daniel Notestein, state under penalty of perjury under the laws of the United States of America that the following is true and correct:

1. I am the chief executive officer of BlockTrades International, Ltd. ("BlockTrades") and SynaptiCAD Sales, Inc. ("SynaptiCAD"). Both of these companies are currently actively involved in the cryptocurrency industry: BlockTrades is a cryptocurrency trading company, and SynaptiCAD is a software contracting company that has frequently developed blockchain software on a contract basis. I currently manage a group of over 30 internationally located programmers who work on blockchain-related projects.

2. I have 32 years of experience as a software professional, much of that focused on software for designing electronic circuitry. For the past 7 years my work has concentrated on development of blockchain-based technology.

3. I served as lead designer for the peer-to-peer networking software layer incorporated into a number of cryptocurrency softwares, including Steem. For many years I worked very closely with the lead designer for the Steem cryptocurrency, and I contributed design ideas to Steem and earlier delegated proof of stake ("DPOS")-based blockchains that he created.

4. I am widely considered one of the foremost experts in delegated proof of stake (DPOS)-based blockchains, the branch of cryptocurrencies of which Steem is a part. DPOS is a verification and consensus mechanism in the blockchain. It is used as a way to verify transactions and promote blockchain organization. For more information on the history of DPOS, see https://hive.blog/blockchain/@blocktrades/the-history-of-delegated-proof-of-stake-dpos.

5. Because of the large amounts of money involved in operating a cryptocurrency trading company, it is imperative to have very advanced computer security. Over the years working in

cryptocurrency, I and the rest of my team have gained expertise in issues related to both cryptocurrency security and general computer security. BlockTrades has a reputation for extremely good computer security, probably one of the highest in the cryptocurrency industry. Because of this reputation, we have been contracted several times to audit the security of various blockchain networks.

6. I am the owner of Steem and Steem-backed Dollars that were confiscated and placed in the community321 account. I own these funds both personally and in my capacity as President and as one of the beneficial owners of BlockTrades.

7. BlockTrades has an account with Bittrex, Inc, with myself as the agent and as one of the beneficial owners.

8. I provided Bittrex, Inc. with proof of ownership of the community321 funds that were stolen from the accounts I manage. Bittrex, Inc. personnel were previously aware of my ownership of at least the "blocktrades" account from which funds were seized and transferred to the community321 account.

9. I was not involved in the transfer of the community321 funds to Bittrex, Inc.

10. I do not know who transferred the community321 funds to Bittrex, Inc.

11. Had I been involved with the transfer, I would have included a memo identifying the owners of the original accounts. In the alternative, I would have recommended moving the funds into an account controlled by myself or another plaintiff.

12. Prior to filing the instant litigation, I made significant effort to reach a resolution with Bittrex, Inc. I provided proof of ownership on behalf of myself and all of the plaintiffs. When Bittrex, Inc. asked for additional information, I provided that as well.

13. The representative of Bittrex, Inc. eventually informed me they would not be releasing our funds. By way of explanation, the representative told me they would only identify another claimant with that claimant's permission. The representative would not tell me if there was no other claimant or if the claimant refused to be identified. The representative then ceased responding to my messages. Only after this action was filed did Bittrex, Inc. make any effort to determine whether other claimants existed.

14. To date, I am unaware of any person or entity other than the Plaintiffs that has made a claim of ownership to the community321 funds. Bittrex, Inc. has refused to identify any such person or entity.

15. Steem and Steem Dollars from a group of Steem accounts, several of which were owned by the Plaintiffs, were seized from their rightful owners and transferred to the community321 account. This was done by modifying the software that operates the Steem cryptocurrency network. I believe the rightful owners were targeted for this theft because they had either publicly criticized Steemit, Inc. or were simply large, unaligned holders of Steem who had not actively supported Steemit, Inc. during disagreements between Steemit, Inc. and other Steem holders.

16. When the funds from the community321 account were diverted to Bittrex, Inc., they were deposited into the bittrex account, an account in which Bittrex, Inc. holds the funds of all of its depositors. From the outside, the bittrex account is indivisible: although Steemit, Inc. can determine how much Steem the bittrex account holds, it cannot tell who owns the funds: it can only see how much total Steem that Bittrex holds in custody for its customers.

17. If Bittrex, Inc. were to create a new account for the Court registry, there would be two ways to do so. One method would be to create a sub-account within the bittrex account, using

Bittrex's internal accounting system. Although this method would protect the contents from outside confiscation, the funds would still be contained within the bittrex account and would remain under the ultimate control of Bittrex, Inc.

18.    The second method of creating an account for the Court registry would be to create a new Steem account, separate from the bittrex account. This would expose the funds to the same type of attempt at seizure that was interrupted by the anonymous transfer to Bittrex, Inc. There is no way the Court registry could maintain the security of funds under these conditions.

19.    In addition, although Bittrex promises it will not keep a copy of the cryptographic keys for this new Steem account, there is only one way to assure no other party would have access to the account. That would be for the Court to create a new set of cryptographic keys and replace the old ones set by Bittrex. If this process were done improperly, the contents of the account could be lost permanently with no method of recovery.

EXECUTED on this 18-th day of August, 2020.

_____
Daniel Notestein