IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

DANIEL NOTESTEIN, BLOCKTRADES
INTERNATIONAL, LTD., ANDREW
CHANEY, SZYMON LAPINSKI, ADAM
DODSON, ELMER LIN, DANIEL HENSLEY,
MICHAEL WOLF, MATHIEU GAGNON, and
MARTIN LEES,

      Plaintiffs/Counter-
      Defendants,

 v.

BITTREX, INC.,

      Defendant/Counter-
      Plaintiff

J. DOES, and

      Defendants

STEEMIT, INC.

      Third-Party
      Defendant

Civil Action No. 7:20CV00342

**BITTREX'S REPLY IN SUPPORT OF
MOTION FOR APPROVAL OF INTERPLEADER BOND
AND JUDGMENT OF INTERPLEADER**

  The parties are now in agreement that interpleader is the appropriate remedy to adjudicate Plaintiffs/Counter-Defendants ("Plaintiffs") and Third-Party Defendant Steemit, Inc.'s ("Steemit") competing claims to the 8,753,313.006 Steem and 294.207 Steem-Backed Dollars (collectively, the "Disputed Steem") currently being held by Defendant/Counter-Plaintiff Bittrex Inc. ("Bittrex"). Plaintiffs and Steemit agree that Bittrex may hold the Disputed Steem on its exchange while this lawsuit is pending, and that a bond in the amount of $3,940,376.70 is appropriate.

However, Plaintiffs claim that Bittrex should be required to remain in the litigation and defend against their claims, despite the fact that Plaintiffs *agree* that Bittrex cannot be subject to liability for claims arising out of Bittrex's attempts to interplead the Disputed Steem. Dkt. 63 at 2. Plaintiffs say their claims are based not on Bittrex's assertion of the interpleader remedy, but instead on Bittrex's "intentional obstruction of . . . potential resolution of this matter." *Id*. As discussed further below, Bittrex engaged in no such "obstruction"—in fact, Bittrex sought to interplead the Disputed Steem in an attempt to *facilitate* the resolution of the dispute by this Court. In other words, Plaintiffs assert claims against Bittrex for somehow "manufacturing" the very dispute *they now admit is properly in front of the Court*. This makes no sense, and is contrary to all applicable case law and the policy goals of the interpleader remedy. Having now met the jurisdictional standards for statutory interpleader, Bittrex should be discharged from this litigation.[1]

Plaintiffs also take issue with Bittrex's request for a permanent injunction. However, as discussed further below, courts routinely grant requests for injunctive relief where interpleader jurisdiction is established and a disinterested stakeholder is thereafter dismissed from the interpleader action. Under these circumstances, a permanent injunction is an appropriate interpleader remedy to protect Bittrex from the risks of future litigation in this and other jurisdictions.

---

[1] As discussed below, Steemit filed counterclaims against Bittrex relating to the units of "Undisputed Steem," *i.e.*, the Steem and Steem-Backed Dollars over which only Steemit (and not Plaintiffs or any other claimant) claims ownership. Steemit partially opposes Bittrex's Motion on the grounds that Bittrex should not be released from liability on Steemit's counterclaims and discharged from the litigation until Bittrex returns the Undisputed Steem to Steemit. Given that Bittrex now has information about how much Steem and Steem-Backed Dollars is in dispute, and that it has received no other claims to the Undisputed Steem, Bittrex requests that the Court enter an order stating that the Undisputed Steem be returned to Steemit, after which Bittrex understands Steemit will not object to Bittrex's discharge from this litigation. *See* Section I.B, *infra*.

WOODS ROGERS PLC
ATTORNEYS AT LAW

Additionally, both Plaintiffs and Steemit dispute Bittrex's entitlement to an award of its reasonable attorney's fees and costs in bringing this Motion. However, it is well-established that the Court has discretion to grant attorney's fees and costs to a successful interpleader plaintiff where the action was brought solely for the benefit of resolving the dispute between the claimants and where the interpleader plaintiff is a disinterested party. But because only Plaintiffs have opposed this interpleader action (whereas Steemit has been generally supportive of Bittrex's efforts to interplead the Disputed Steem), Bittrex submits that fees and costs should only be assessed against Plaintiffs.

Accordingly, Bittrex respectfully requests that the Court enter an order (1) approving the amount and form of Bittrex's proposed interpleader bond, (2) ordering Bittrex to release and return the Undisputed Steem to Steemit, (3) discharging Bittrex with prejudice from in this action, (4) enjoining all claimants from bringing claims against Bittrex relating to the Disputed Steem claimed by Plaintiffs, and (5) awarding Bittrex the fees and costs incurred in bringing this motion (to be assessed against Plaintiffs).

## I. FACTS IN REPLY

**A.   Bittrex Was Aware from the Outset that Competing Claimants Existed to the Disputed Steem**

As the Court is aware, this interpleader action concerns 8,753,313.006 units of Steem and 294.207 Steem-Backed Dollars currently in Bittrex's possession and subject to competing claims by Plaintiffs and Steemit.[2] The key facts are undisputed, and it is clear that Plaintiffs' allegations that Bittrex somehow "obstructed" resolution of this dispute are entirely false.

Bittrex involuntarily came into possession of the Disputed Steem following an admittedly contentious "hard fork" and subsequent hack, a course of events that Plaintiffs and Steemit both

WOODS ROGERS PLC
ATTORNEYS AT LAW

---

[2] Bittrex incorporates by reference the facts set forth in its prior pleadings. *See* Dkts. 15, 21, 26, & 61.

describe as an act of theft. *See* Dkts 63 at 1-2 (Plaintiffs describing the hard fork as "contentious" and as an "act of theft."); 64 at 2-3 (Steemit describing the hack as a "theft of digital currency."). The "hard fork," i.e., a change in the rules governing the Steem "blockchain," was considered contentious because it transferred Steem and Steem-Backed Dollars held by certain Steem accounts to a Steem account named "community321." Declaration of Julian Yap In Support of Bittrex, Inc.'s Motion to Deposit Disputed Cryptocurrency Into the Court Registry (Dkt. 15-1) ("Yap Decl.") ¶ 17.

The parties further agree that, on May 20, 2020, following the contentious "hard fork," an unknown person purporting to be a "white knight hacker" transferred approximately 23,627,501 units of Steem and 407 Steem-Backed Dollars from the "community321" account into Bittrex's Steem wallet. *See* Dkt. 24 ¶ 22; Dkt. 64 at 2-3. Neither Plaintiffs nor Steemit have alleged that Bittrex participated in the hack in any capacity. Importantly, because the Disputed Steem came into Bittrex's possession as the result of the contentious "hard fork" and subsequent hack, it was obvious to Bittrex from the outset that there would be a dispute over the ownership of the Steem and Steem-Backed Dollars transferred into Bittrex's Steem wallet from the "community321" account. Supplemental Declaration of Kevin Hamilton in Support of Bittrex' Motion for Approval of Interpleader Bond and Judgment of Interpleader ("Suppl. Hamilton Decl.") ¶ 3. These circumstances, standing alone, were sufficient to put Bittrex on notice of the existence of competing claims.

In short order, Bittrex received actual notice of the competing claims to the Disputed Steem. Plaintiffs inaccurately allege that no competing claimants to the Disputed Steem existed until after this action was filed in July 2020, when Plaintiffs claim that Bittrex "set out in search of another claimant." Dkt. 63 at 3. In reality, on May 22, 2020, <u>two days after the hack</u>, Bittrex

Woods Rogers PLC
Attorneys at Law

Page **4** of **15**

was contacted by various persons stating that the Steem had been stolen from the "community321" account and that the funds should be returned to a new account held by the Steem community, as the "community321" account had been hacked. Suppl. Hamilton Decl. ¶ 5. Separately, in May and June 2020, Bittrex was contacted by Plaintiffs, who similarly informed Bittrex that they were owners of a portion of the Steem and Steem-Backed Dollars transferred from the "community321" account to Bittrex. Declaration of Kevin Hamilton in Support of Bittrex, Inc.'s Motion to Deposit Disputed Cryptocurrency into the Court Registry (Dkt. 15-2) ("Hamilton Decl.") ¶¶ 3-5.

Accordingly, facing competing claims to the Disputed Steem and given various complexities involved with the ownership and transfer of the Disputed Steem, Bittrex dedicated time and resources in the weeks following the hack to determining who the adverse claimants were, the nature of their claim to the Disputed Steem, and the amount of the Steem/Steem-Backed Dollars actually in dispute.[3] Suppl. Hamilton Decl. ¶ 8. In addition, as noted in prior pleadings, individuals associated with Steemit and making a claim to the Disputed Steem initially declined to identify themselves to Bittrex and/or declined to allow Bittrex to release their identities to Plaintiffs. Dkt. 7 at ¶ 24.

In early July 2020, six weeks after various persons had already asked Bittrex to return the Steem and Steem-Backed Dollars to the Steem community, Bittrex's counsel corresponded with counsel for Steemit, who reiterated that Bittrex should not release the Disputed Steem to Plaintiffs. Declaration of Claire Martirosian (Dkt. 15-3) ("Martirosian Decl.") ¶ 2. Steemit's counsel informed Bittrex that the Disputed Steem was stolen by the "white knight hacker," and that Plaintiffs were potentially involved in and/or connected to the actions of the purported

WOODS ROGERS PLC
ATTORNEYS AT LAW

---

[3] Indeed, despite months of requests from Bittrex, Plaintiffs did not tell Bittrex how much of the Disputed Steem they were claiming until March 11, 2021. *See* Dkt. 62, **Ex. B**.

"white knight hacker." *Id*.; *see also* Dkt. 23-2*,* **Ex. A** (Steemit's counsel confirming that "Steemit intends to appear in this litigation and will respond in due course to assert its claim, right or interest in the digital tokens at issue.").

Steemit then appeared in this litigation and formally asserted a claim to the Disputed Steem. *See generally* Dkt. 28 at 9, ¶ 4. In sum, though it took several months for a claimant to appear in this litigation and assert a claim to the Disputed Steem, it was clear to Bittrex almost immediately that competing claimants to the Disputed Steem did, in fact, exist.

B.     **Steemit's Claim to the Undisputed Steem**

Throughout the course of this litigation, Steemit has been generally supportive of Bittrex's attempts to interplead the Disputed Steem. However, there is a portion of the Steem held in Bittrex's Steem wallet that is "Undisputed," i.e., the approximately 14,468,436 units of Steem and 130.251 Steem-Backed Dollars that has not been claimed by Plaintiffs or any other claimant other than Steemit.[4] On September 22, 2020, Steemit asserted three counterclaims against Bittrex—injunctive relief, detinue, and conversion—related to Bittrex's holding of the "Undisputed Steem." *See* Dkt. 28 ¶¶ 51-73. Steemit takes the position that, in light of these counterclaims, Bittrex should not be released from the litigation until the Undisputed Steem is returned to Steemit. Bittrex acknowledges that Steemit's counterclaims (though currently stayed) are pending and capable of resolution through this interpleader action.

As stated above and in Bittrex's opening Motion, until recently, Bittrex was unable to determine the precise amount of "Undisputed Steem" at issue because Plaintiffs failed to clarify or confirm the exact amount of Steem and Steem-Backed Dollars to which they claim ownership.

---

[4] Bittrex has received claims from three claimants who are not part of the Plaintiff group. Suppl. Hamilton Decl. ¶ 7. According to a spreadsheet previously provided to Bittrex by Plaintiff Notestein, the amounts at issue for these three non-Plaintiff claimants is approximately 406,752 Steem and 2.542 Steem Backed Dollars, though the amounts represented on the Steem blockchain differ slightly from the information received from Plaintiff. *Id.*

WOODS ROGERS PLC
ATTORNEYS AT LAW

Given that Plaintiffs have finally done so, and given that no other claim has been received as to the Undisputed Steem, Bittrex has submitted a revised proposed order asking that the Court order the Undisputed Steem be returned to Steemit. Bittrex understands that once the Undisputed Steem has been returned to Steemit, Steemit will have no objection to Bittrex's discharge from this litigation.

## II. REPLY ARGUMENT

**A.  Plaintiffs Admit that Interpleader Jurisdiction is Proper and Fail to Refute that Bittrex is Anything But a Neutral Stakeholder Deserving of Dismissal from this Action**

As noted, in their opposition to Bittrex's motion, Plaintiffs concede that Bittrex has satisfied the jurisdictional requirements for statutory interpleader, and also agree that the bond proposed by Bittrex is acceptable. Dkt. 63 at 1-2 ("Although Bittrex was unable to meet the jurisdictional requirements of statutory interpleader at the time it filed its Counterclaims, it is able to do so today. . . . Bittre*x* is correct when it represents to the Court that Plaintiffs have agreed a bond in the amount of $3,940,276.70 is acceptable."). Nonetheless, Plaintiffs are apparently determined to drag Bittrex—a neutral stakeholder—through this litigation. They assert that the Court should deny Bittrex's reasonable request to be discharged from this action, even though they admit that the requirements for interpleader have been satisfied. But the arguments patched together by Plaintiffs to support their novel theory are entirely unconvincing and contrary to both well-established law and the policy goals behind the interpleader remedy.

Plaintiffs assert that Bittrex should not be discharged from this action because their claims against Bittrex "are not merely based on a failure to render payment," but also "upon Bittrex's intentional obstruction of any potential resolution of this matter" by "undertaking a search for alternate claimants," or by taking actions that "led to the conflict between the claimants." Dkt. 63 at 4-5. Plaintiffs' argument appears to be that Bittrex is somehow

independently liable for causing the dispute between Plaintiffs and Steemit. This argument fails for several reasons.

As an initial matter, as discussed above and in prior pleadings, Bittrex was aware that competing claimants existed well before Plaintiffs filed their lawsuit. However, given the complexities of blockchain technology, it understandably took some time for Bittrex to understand the scope of the hack and the identity of the various claimants. Suppl. Hamilton Decl. ¶ 8. Bittrex did not "manufacture" the dispute; rather, the dispute existed from the moment of the hard fork and subsequent hack. There is thus no evidence of "[w]rongful conduct independent of the act of filing an interpleader" occurring prior to Bittrex's initiation of this interpleader action, as Plaintiffs now allege. Dkt. 63 at 4-5. Instead, the actions about which Plaintiffs complain were simply the necessary steps Bittrex had to take to avoid subjecting itself to multiple liabilities to competing claimants.

Essentially, Plaintiffs' argument is that Bittrex somehow created the conflict between the claimants to the Disputed Steem that led to this interpleader action. This makes no sense. In fact, Plaintiffs now *agree that interpleader is appropriate*—i.e., they agree there is an actual, cognizable dispute between competing claimants. Plaintiffs attempt to position their *allegation* that Bittrex obstructed "any potential resolution of this matter" as a standalone claim, which, of course, it is not. As discussed in Bittrex's Motion, Plaintiffs assert four causes of action against Bittrex—injunctive relief, breach of bailment, conversion, and injury to business or trade—each of which expressly relates to Bittrex's holding of the Disputed Steem. *See* Dkt. 1 ¶¶ 25-26, 28, 30. As Plaintiffs concede in their opposition brief, the sole purpose of their lawsuit was to facilitate the "return of their property." Dkt. 63 at 3 ("Bittrex left the Plaintiffs with no other option than to file this action for return of their property."). Plaintiffs' belated efforts to rework

WOODS ROGERS PLC
ATTORNEYS AT LAW

Page **8** of **15**

their theory of liability at this juncture, and for the purpose of evading the appropriate interpleader remedy, is entirely unconvincing.

For the reasons described above, the cases cited by Plaintiffs are easily distinguishable. For example, in *Wayzata Bank Trust Co. v. A & B Farms*, 855 F.2d 590, 593 (8th Cir. 1988), the interpleading party breached fiduciary duties owned to trust beneficiaries which resulted in the diminishment of the fund in dispute. In this case, there is no allegation that Bittrex breached duties independently owed to Plaintiffs or that Bittrex's conduct resulted in the improper diminishment of the Disputed Steem before this interpleader action was filed. Accordingly, *Wayzata* is inapposite.

The only other case on which Plaintiffs substantively rely is *Companion Life Insurance Co. v. Shaffer*, 442 F. Supp. 826 (S.D.N.Y 1997). *Shaffer* is also readily distinguishable. In *Shaffer*, the court declined to discharge an interpleading insurer because the procedures employed by the insurer in writing the policy at issue ultimately resulted in the interpleader defendants' conflicting claims to insurance proceeds. 422 F. Supp. at 829-30 (". . . I am uncomfortable with the procedures employed by plaintiff to insure that the policy was written in accordance with the wishes of the insured."). Here, of course, the conflict between Plaintiffs and Steemit is solely the outcome of actions with which Bittrex undisputedly had nothing to do—i.e., the contentious "hard fork" and subsequent hack of the "community321" account, which resulted in the Disputed Steem being involuntarily transferred to Bittrex's Steem wallet. Unlike the insurer in *Shaffer*, who the Court viewed as independently liable on account of its negligent procedures which produced the conflicts between the claimants, Bittrex had nothing to do with generating the dispute here, and the process it followed once it became the unwilling recipient of the disputed funds were entirely proper.

Bittrex acknowledges that if discharged from liability with respect to the Disputed Steem claimed by Plaintiffs, it will remain subject to the Court's jurisdiction and will comply with the Court's final order regarding disbursement of the Disputed Steem. But because Bittrex has met the requirements of the interpleader statute, Bittrex should otherwise be entitled to discharge from the litigation.

**B.     Because Bittrex is a Disinterested Stakeholder, the Court should Enjoin All Potential Claimants from Bringing Any Claims Against Bittrex With Respect to the Disputed Steem Claimed by Plaintiffs**

Plaintiffs assert that Bittrex's request for an injunction is improper. Dkt. 63 at 5-6. However, permanent injunctions are commonly granted to successful interpleader plaintiffs who are also neutral stakeholders, such as Bittrex, to protect the stakeholder from the risks of liability to competing claimants. *See*, *e.g., Branch Banking & Tr. Co. v. ServisFirst Bank*, 2:19-CV-00366, 2019 WL 7165980, at *19 (S.D. W. Va. Dec. 20, 2019) ("Pursuant to 28 U.S.C. § 2361, a permanent injunction restraining defendants from continuing or instituting suit against [interpleader plaintiff] is necessary to protect it from these risks of liability."); *Wilshire Ins. Co. v. Johnson*, CIV.A.5:050026, 2006 WL 516774, at *2 (S.D. W.Va. Mar. 1, 2006) ("Once the court determines that interpleader is proper, the court may enjoin proceedings related to the same subject matter and discharge the stakeholder if it is disinterested (seeks no part of the stake)."). Notably, Plaintiffs appear to agree that, at minimum, a temporary injunction would be appropriate here. Dkt. 63 at 6 ("Plaintiffs do not object to a temporary injunction restraining any additional litigation.").

Because Bittrex is a disinterested stakeholder, with no claim to the Disputed Steem, the Court should dismiss Bittrex and permanently enjoin all claimants from "continuing or instituting suit" against Bittrex in connection with the Disputed Steem claimed by Plaintiffs. *Branch Banking*, 2019 WL 7165980, at *19; *see also Auto Parts Mfg. Mississippi, Inc. v. King*

WOODS ROGERS PLC
ATTORNEYS AT LAW

*Const. of Houston, L.L.C.*, 782 F.3d 186, 192 (5th Cir. 2015) ("[I]t makes good sense for an injunction connected to discharge of an interpleader plaintiff to be permanent. Imposing an injunction that lasts only for the duration of the interpleader action is inconsistent with interpleader's purposes of enabling 'the plaintiff-stakeholder to avoid the burden of unnecessary litigation or the risk of loss by the establishment of multiple liability when only a single obligation is owing.'" (quoting *Hussain v. Bos. Old Colony Ins. Co.,* 311 F.3d 623, 631 (5th Cir. 2002)).

C. **Bittrex is Entitled to Recover, from Plaintiffs, the Reasonable Attorney's Fees and Costs Incurred in Bringing this Motion**

Finally, both Plaintiffs and Steemit dispute that Bittrex is entitled to an award of attorney's fees and costs in bringing this Motion. However, like dismissal and a permanent injunction, attorney's fees and costs are a common form of interpleader relief. Bittrex is entitled to recoup its reasonable attorney's fees and costs related to obtaining interpleader relief—a result Plaintiffs have consistently opposed. *See*, *e.g.*, *Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Sprague*, 251 Fed. Appx. 155, 156 (4th Cir. 2007) ("[F]ederal courts have held that it is proper for an interpleader plaintiff to be reimbursed for costs associated with bringing the action forward."); *Sun Life Assur. Co. of Canada v. Bew*, 530 F. Supp. 2d 773, 775 (E.D. Va. 2007) ("[A]ttorneys' fees and costs may be awarded to a stakeholder in an interpleader action based on the rationale that the stakeholder, 'by seeking resolution of the multiple claims to the proceeds, benefits the claimants, and . . . should not have to absorb attorneys' fees in avoiding the possibility of multiple litigation.'" (quoting *Reliastar Life Ins. Co. of N.Y.,* 2006 WL 733968, at *9 (W.D. Va. Mar. 16, 2006)); *see also Jefferson Pilot. Fin. Ins. Co. v. Buckley,* No. Civ.A. 3:04CV783, 2005 WL 221076, at *2 (E.D. Va. Jan. 13, 2005) ("The grant of attorney's fees is

WOODS ROGERS PLC
ATTORNEYS AT LAW

appropriate in this case because the action was brought for the benefit of resolving the dispute between the claimants and Plaintiff is a disinterested party.").

Because Bittrex initiated this interpleader action for the benefit of resolving the dispute between the claimants, and because Bittrex is a disinterested party, an award of attorney's fees is appropriate here. To be clear, Bittrex does not seek fees associated with its (unsuccessful) Motion to Deposit Cryptocurrency—only its fees associated with the instant Motion. While both Steemit and Plaintiffs are theoretically liable for Bittrex's fees and costs, in reality, it is only Plaintiffs who have forced Bittrex to litigate the interpleader issue (Steemit previously agreed that the parties could simply stipulate that Bittrex would hold the funds during the course of the litigation, and that Bittrex need not participate substantively in the litigation over the Disputed Steem). Therefore, Bittrex does not seek fees or costs from Steemit, as only Plaintiffs have unnecessarily forced Bittrex to litigate this issue.

**D.    Bittrex Asks the Court to Order that the Undisputed Steem Be Released to Steemit**

Steemit agrees that interpleader is appropriate and does not oppose "Bittrex's request to be discharged from an obligation to continue litigating over the Disputed Steem." Dkt. 64 at 3-4. Steemit does, however, object to Bittrex being discharged from all further participation in this action unless and until the Undisputed Steem—to which Steemit alone claims ownership—is released back to Steemit. *Id*. at 4-5. Bittrex agrees with Steemit that the Undisputed Steem need not be the subject of this interpleader action: Bittrex has received no claims to the Undisputed Steem other than Steemit's, and, based on Plaintiffs' recent confirmation of the Steem to which

WOODS ROGERS PLC
ATTORNEYS AT LAW

they claim ownership, Bittrex is now able to calculate the amount of Steem and Steem-Backed Dollars hacked from the "community321" account to which Steemit is the only known claimant.[5]

Accordingly, Bittrex is prepared to release and return the Undisputed Steem to Steemit. In order to do so, Bittrex respectfully requests that the Court include in its order granting interpleader relief an instruction that Bittrex transfer the Undisputed Steem back to Steemit, at which point Bittrex understands that Steemit will not object to Bittrex's discharge from the litigation. Bittrex submits a revised proposed order herewith that separately addresses the Disputed and Undisputed Steem.

### III. CONCLUSION

For the foregoing reasons, Bittrex respectfully requests that the Court enter an order:

(1) Granting Bittrex's motion for approval to post a bond in the amount of $3,940,376.70 in place of cash or other property deposited into the Court registry to secure Bittrex's obligations with respect to the Disputed Steem claimed by Plaintiffs;

(2) Approving the form of Bittrex's proposed Interpleader Bond;

(3) Directing Bittrex to release and return the Undisputed Steem to Third-Party Defendant Steemit, Inc.;

(4) Discharging Bittrex with prejudice from all liability arising out of or in connection with the Disputed Steem claimed by Plaintiffs and releasing Bittrex from further participation in this action;

WOODS ROGERS PLC
ATTORNEYS AT LAW

---

[5] As stated in Section I.B and footnote 4, *supra*, Bittrex has received claims from three claimants who are not members of the Plaintiff group in this litigation. Bittrex does not include the Steem and Steem-Backed Dollars claimed by these claimants in its calculation of the Undisputed Steem.

(5) Ordering that Bittrex remain subject to the Court's jurisdiction for purposes of effectuating the interpleader remedy and following the Court's ultimate direction regarding disbursement of the Disputed Steem claimed by Plaintiffs;

(4) Enjoining all persons or parties from instituting against Bittrex any action or further prosecuting any existing action in any state court or in any Court of the United States or in any other tribunal arising from, relating to, or concerning the Disputed Steem claimed by Plaintiffs; and

(5) Awarding Bittrex reasonable attorney's fees and costs associated with this Motion from Plaintiffs.

DATED this 29th day of March, 2021.

Respectfully submitted,

WOODS ROGERS PLC

J. Benjamin Rottenborn (VSB No. 84796)
10 South Jefferson Street, Suite 1400
Roanoke, Virginia 24011
Phone: (540) 983-7540
brottenborn@woodsrogers.com

AND

McNAUL EBEL NAWROT & HELGREN PLLC

By:  s/ Claire Martirosian
Gregory J. Hollon, *Pro Hac Vice*
Claire Martirosian, *Pro Hac Vice*
600 University Street, Suite 2700
Seattle, Washington 98101
Phone:  (206) 467-1816
ghollon@mcnaul.com
cmartirosian@mcnaul.com

*Counsel for Defendant Bittrex, Inc.*

**CERTIFICATE OF SERVICE**

      I, the undersigned, hereby certify that a true and correct copy of the foregoing was served via the CM/ECF system on the individuals listed below on March 29, 2021:

Michelle C. F. Derrico, Esq. (VSB 34037)
Richard L. Derrico, Esq. (VSB 33442)
Copenhaver, Ellett & Derrico
30 Franklin Road, SW, Suite 200
Roanoke, VA 24011
(540) 343-9349
(540) 342-9258 Facsimile
michelle@cecd.roacoxmail.com
rick@cecd.roacoxmail.com

*Counsel for Plaintiffs*

                        By: s/ Claire Martirosian
                              Claire Martirosian, *Pro Hac Vice*
                              *Counsel for Defendant Bittrex, Inc.*