UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

DANIEL NOTESTEIN, BLOCKTRADES
INTERNATIONAL, LTD., ANDREW
CHANEY, SZYMON LAPINSKI, ADAM
DODSON, ELMER LIN, DANIEL
HENSLEY, MICHAEL WOLF, MATHIEU
GAGNON, and MARTIN LEES,

        Plaintiffs/Counter-
        Defendants,

v.

BITTREX, INC., and                                 Civil Action No.: 7:20CV00342

        Defendant/Counter-Plaintiff
        and Counter-Defendant,

J. DOES,

        Defendants.

-----------------------------------------------------

BITTREX, INC.,

        Defendant/Counter-Plaintiff
        and Counter-Defendant,

v.

STEEMIT, INC.,

        Third-Party
        Defendant/Counter- and
        Third-Party Plaintiff.

-----------------------------------------------------

STEEMIT, INC.,

        Third-Party
        Defendant/Counter- and
        Third-Party Plaintiff,

v.

BITTREX, INC.,

        Defendant/Counter-Plaintiff
        and Counter-Defendant,
        and

JOHN DOES 1-10,

        Third-Party Defendants.

**STEEMIT, INC.'S OPPOSITION TO PLAINTIFFS'
MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT**

Third-Party Defendant/Counter- and Third-Party Plaintiff Steemit, Inc. ("Steemit"), by counsel, hereby submits its Opposition to Plaintiffs' Motion for Leave to File an Amended Complaint (ECF No. 74).

## INTRODUCTION

This case is about digital tokens that were stolen from an online wallet controlled by Steemit and then transferred to Bittrex, Inc. ("Bittrex"), a digital currency exchange. Ownership of a portion of the tokens is disputed, with Plaintiffs and Steemit both making a claim. For the majority of the stolen tokens, only Steemit has claimed ownership.

Recently, the parties all agreed that statutory interpleader is proper with respect to the disputed tokens. If the Court concurs, Bittrex will submit a bond to secure the disputed tokens' value, the Court will decide whether Plaintiffs or Steemit have the better claim, and Bittrex will then transfer the tokens to their rightful owner. This precise situation is why interpleader exists.

Despite recognizing that interpleader is appropriate, Plaintiffs refuse to let it govern the ownership question. Instead, Plaintiffs distort the interpleader process in a continuing effort to assert and maintain spurious claims related to the disputed tokens.

Plaintiffs' motion for leave to add Steemit as a Defendant should be denied on multiple independent grounds. At the outset, the request is futile, as Plaintiffs do not assert any plausible claim for relief. Plaintiffs seek to name Steemit merely because it made a claim of ownership in the interpleader action. But making a claim to ownership is precisely what interpleader contemplates; it is not unlawful. If it were, there could be no interpleader remedy (which requires competing claimants) without, at the same time, drawing a direct claim. Plaintiffs' statutory *business* conspiracy claim is likewise defective. Plaintiffs are all individuals, save

BlockTrades International, Ltd. ("BlockTrades"), whose citizenship remains in question. More fundamentally, there is no credible basis for alleging concerted action or common purpose among Bittrex and Steemit. Bittrex is a disinterested stakeholder. It has not preferred Steemit's claim over Plaintiffs' – it treated the claimants just the same – and did not transfer the disputed tokens to Steemit. Instead, Bittrex filed an action in interpleader, *suing* Steemit in the process.

Plaintiffs' motion is also futile because the proposed amended complaint concerns ownership of the disputed tokens, but that issue is entirely subsumed by the interpleader action. If anything, the Court should issue an order under 28 U.S.C. § 2361 enjoining Plaintiffs from instituting these or similar claims.

Finally, Plaintiffs' motion should be denied because it cannot be the product of good faith. Plaintiffs assert that they *now* want to substitute Steemit for a "John Doe" Defendant, because Steemit makes a claim to disputed tokens. But Plaintiffs have had ***actual knowledge of Steemit's claim for almost a year***. Further, Plaintiffs agree that interpleader is proper with respect to the disputed tokens and are well aware of interpleader's preclusive effect for related claims. As such, this belated effort is a knowing attempt to get around the orderly proceedings that should flow from the interpleader action.

Plaintiffs' wasteful litigation tactics must end.[1] The Court should accept jurisdiction over the interpleader action, Plaintiffs and Steemit should advance their respective claims therein, and the motion for leave to amend should be denied.

---

[1] If Plaintiffs do not voluntarily withdraw their motion to amend, Steemit intends to seek its reasonable attorneys' fees and costs incurred, pursuant to Virginia Code § 18.2-500(B) (the Court may "decree damages and costs of suit, including reasonable counsel fees to . . . defendants' counsel").

## RELEVANT BACKGROUND

**A. Hackers Stole Digital Currency From An Online Wallet Controlled By Steemit, And Deposited The Stolen Currency With Bittrex.**

In 2016, Steemit launched a blockchain-based project called "Steem." The centerpiece of the project is the social media website, www.steemit.com, which Steemit owns and operates. ECF No. 28 at 9, ¶ 5. To incentivize contributions to www.steemit.com, Steemit created digital currency, or tokens, which include the STEEM and Steem Blockchain Dollars ("SBD") at issue in this dispute.[2] This digital currency can be traded on exchanges like Bittrex. *Id*. at 13-14, ¶ 24.

After the sale of Steemit was announced, there was significant discord within the Steem community. *See id*. at 15-18, ¶¶ 28-35. This culminated in a community-consensus driven "hard fork" on May 20, 2020, whereby tokens previously assigned to Plaintiffs and others were transferred into the @community321 wallet controlled by Steemit. *Id*. at 19-20, ¶¶ 36-40; *see also* ECF No. 21 at 10, ¶¶ 21-22; ECF No. 61 at 4-5; ECF No. 64 at 2-3.

This authorized transfer was short-lived, as the @community321 wallet was quickly compromised by unknown hackers. Seconds after the tokens reached the wallet, they were diverted to an account controlled by Bittrex. ECF No. 28 at 20-21, ¶¶ 41-46. These criminals purported to be a "white knight hacker," and instructed Bittrex to return the tokens to their "original owners." ECF No. 21 at 10, ¶ 22.

**B. Plaintiffs Sued Bittrex And A "John Doe" Defendant.**

Plaintiffs filed suit against Bittrex on June 16, 2020, also naming a "John Doe" Defendant. ECF No. 1. Plaintiffs claimed to be the rightful owners of a subset of the stolen tokens, alleging claims against Bittrex for injunctive relief, breach of bailment, conversion, and

---

[2] The "Steem" blockchain project is governed by community consensus. ECF No. 28 at 14-15, ¶¶ 25-27.

statutory business conspiracy. *Id*. at 3-5.

### C. Bittrex Initiated An Interpleader Action Over The "Disputed Steem," Bringing Steemit Into The Case.

In response to Plaintiffs' lawsuit, Bittrex counterclaimed with an action in interpleader. ECF No. 7. As part of its interpleader action, Bittrex added Steemit as a third-party defendant. *Id*. at 7, ¶ 1. Bittrex amended its interpleader claim on August 19, 2020. ECF No. 21. There, Bittrex stated expressly that Steemit "claims a right to and interest in the Disputed Steem claimed by Plaintiffs," and that "Steemit, Inc. plans to participate in this litigation to pursue its rights and interests against Plaintiffs." *Id*. at 11, ¶ 24.

### D. Steemit Made A Claim To The Disputed Steem, Counterclaimed Against Bittrex As To The Non-Disputed Tokens, And Filed A Third-Party Complaint Against The Unknown Hackers.

On September 22, 2020, Steemit timely responded to Bittrex's interpleader action. ECF No. 28. Steemit filed an Answer, expressly making a claim to the Disputed Steem also claimed by Plaintiffs. *See, e.g., id*. at 5-6, ¶ 24.[3]

As part of its responsive pleading, Steemit also filed affirmative claims. It counterclaimed against Bittrex with respect to the Non-Disputed Tokens – *i.e*., the majority of the tokens stolen from the @community321 wallet – alleging claims for injunctive relief, detinue, and conversion. ECF No. 28 at 8-26.[4] Steemit also filed Third-Party Claims against the unknown "John Doe" hackers involved in the theft. *Id*. at 8-22, 26-30.

---

[3] Approximately 23,627,501 STEEM and 427 SBD were stolen from the @community321 wallet. ECF No. 28 at 5, ¶ 22. Plaintiffs originally claimed 6,999,300 STEEM and 250 SBD. ECF No. 21 at 11, ¶ 21. Recently, Plaintiffs' increased their claim to 8,752,313.006 STEEM and 294.207 SBD. ECF No. 61 at 6.

[4] Steemit's claims against Bittrex over the Non-Disputed Tokens are stayed. ECF. No. 53. Bittrex also requested that the Court enter an order returning the Non-Disputed Tokens (the "Undisputed Steem") to Steemit. ECF No. 65 at 2 (n.1), 3, 6-7, 12-13; *see also* ECF No. 65-1 at 2 (proposed order).

### E. Plaintiffs Have Hindered Commencement Of The Interpleader Action.

Plaintiffs opposed the interpleader action for months (*see, e.g.*, ECF Nos. 17, 20, 25), ultimately relenting when Bittrex was able to secure a bond. ECF No. 63 at 3 ("Plaintiffs Do Not Object Generally to Interpleader."), 4 (stating that Bittrex is able to meet the jurisdictional requirements for interpleader, and "Plaintiffs have agreed a bond in the amount of $3,940,276.20 is acceptable").

Nevertheless, Plaintiffs fight dismissal of their claims against Bittrex, even though all concern the same property (*i.e*, the Disputed Steem) that is subject to the interpleader action. *Id*. at 4-6. In its bond motion briefing, Bittrex addressed the illogic of this continuing position and requested a 28 U.S.C. § 2361 order enjoining pursuit of those claims. ECF No. 61 at 10-13, 17; ECF No. 65 at 2, 7-11.

### F. The Court Raised Jurisdictional Concerns About Plaintiffs' Complaint.

At the May 24, 2021 hearing on Bittrex's bond motion, the Court expressed two subject-matter jurisdiction concerns in connection with Plaintiffs' Complaint, issuing an Order to Show Cause the next day. ECF No. 72. First, the citizenship of BlockTrades – the one Plaintiff that is not an individual – was unclear. *Id*. at 1. Second, Plaintiffs' "John Doe" Defendant created diversity of citizenship issues. *Id*. at 1-2.

On June 8, 2021, Plaintiffs responded to the Order to Show Cause. They attached BlockTrades' Certificate of Incorporation and stated that BlockTrades was a citizen of the Cayman Islands and Virginia. ECF No. 73 at 3. They requested the opportunity to identify the John Doe defendant in discovery, or alternatively have the Court dismiss John Doe or allow Plaintiffs to amend their Complaint. *Id*. at 4. Plaintiffs also argued that the John Doe was a

"nominal party" and could be dropped. *Id*. at 4-5.[5]

### G. Almost Immediately Thereafter, Plaintiffs Filed A Motion Seeking Leave To Substitute Steemit For The John Doe Defendant.

Six days after filing their response to the Order to Show Cause, Plaintiffs filed the instant motion. ECF Nos. 74, 74-1. The proposed amended complaint doubles-down on the same fallacy that Bittrex recently addressed: Plaintiffs' attempt to maintain claims over the Disputed Steem that are ***part and parcel*** of the interpleader action. Plaintiffs now seek to add Steemit to their improper claims, specifically to "substitute Steemit, Inc. for J. Doe." ECF No. 74.

In brief, Plaintiffs contend that when they filed the original Complaint over a year ago, they may have suspected, but did not know, that Steemit would make a claim to the Disputed Steem. ECF No. 75 at 2-4.[6] Plaintiffs state that Steemit then did make such a claim in a letter attached to a Bittrex brief (*id*. at 3) – which was filed on August 25, 2020 (*see* ECF No. 23-3).

Steemit's simple act of making a claim is what Plaintiffs now allege is unlawful. In the original Complaint, Plaintiffs stated that "J. Doe(s) may be another party/parties making a claim of right to Plaintiffs' Steem." *Id*., ¶ 22. The same paragraph in the proposed amended complaint now reads: "Eventually, Steemit made a claim of ownership to Plaintiffs' Steem." ECF No. 74-1, ¶ 22.[7]

---

[5] Steemit and Bittrex each filed responses to Plaintiffs' submission on June 22, 2021. ECF Nos. 76, 77. Each stated that the Court should independently retain jurisdiction over the interpleader action, irrespective of any jurisdictional issues with Plaintiffs' Complaint. ECF No. 76 at 2-3, 5-6; ECF No. 77 at 1, 3-7.

[6] Steemit does not address here the numerous ways in which Plaintiffs' motion for leave to amend mischaracterizes the pleadings in this action and misstates the relevant facts, in particular by ignoring that Steemit is governed by community consensus and misstating Steemit's pleadings to suggest that it somehow "admitted involvement" in "a partially executed theft." *See* ECF No. 75 at 2. Steemit said no such thing. Indeed, Plaintiffs' entire claim to the Disputed Steem flows from the same flawed premise – a refusal to acknowledge the terms of service and governance structure to which Plaintiffs agreed.

[7] The proposed amended complaint is largely unchanged from the original, including persisting misstatements concerning claimed damages. *Compare* ECF No. 1 *with* ECF No. 74-1.

Plaintiffs' proposed pleading also states that "[m]onths after the filing of Plaintiffs' initial Complaint, Bittrex informed the court it had been taking direction in part from Steemit." *Id.*, ¶ 21. Although not specified, this appears to be a reference either to Bittrex's amended interpleader complaint filed on August 19, 2020,[8] or its brief filed on August 25, 2020.[9] Without support, Plaintiffs then allege that by this interpleader action, Bittrex is somehow doing Steemit's "bidding." *Id.*

Plaintiffs seek leave to assert three Counts: (1) breach of bailment; (2) conversion; and (3) statutory business conspiracy under Virginia Code § 18.2-500.[10] ECF No. 74-1 at 4. Only the latter two claims would be alleged against Steemit. *Id.*

## STANDARD OF REVIEW

After a responsive pleading has been filed, a complaint can only be amended with the Court's leave. Fed. R. Civ. P. 15(a)(2). While leave should be given freely "when justice so requires" (*id.*), it should be denied "when the amendment would be prejudicial to the opposing party, there has been bad faith on the party of the moving party, or amendment would be futile." *Van Leer v. Deutche Bank Sec., Inc.*, 479 Fed. Appx. 475, 479 (4th Cir. 2012) (quotation omitted). "The grant or denial of leave lies in the sound discretion of the district court." *Basham v. Jenks*, No. 7:17cv202, 2018 U.S. Dist. LEXIS 79763, at *7 (W. D. Va. May 10, 2018).

"A proposed amendment is futile when it would not survive a motion to dismiss." *Id.* at *8. Thus, "[a] district court determines futility under the standard of Fed. R. Civ. P. 12(b)." *Id.*

---

[8] ECF No. 21 at 11, ¶ 24 ("Steemit, Inc. claims a right to and interest in the Disputed Steem claimed by Plaintiffs," and "Steemit, Inc. plans to participate in this litigation to pursue its rights and interests against Plaintiffs.").

[9] ECF No. 23 at 2 ("Steemit, Inc. claims a right to and interest in the Disputed Steem, and (3) Steemit, Inc. plans to participate in this litigation to pursue its rights and interests against Plaintiffs.").

[10] The proposed amended complaint labels breach of bailment "Count I," then skips to "Count III" for conversion and "Count IV" for statutory business conspiracy. ECF 74-1 at 4.

(quotation omitted); *see also Van Leer*, 479 Fed. Appx. at 479 ("We adjudge amendment futile when the proposed amended complaint fails to state a claim."); *Blick v. Shapiro & Brown, LLP*, No. 3:16cv70, 2017 U.S. Dist. LEXIS 1826, at *6 (W.D. Va. Jan. 5. 2017) ("Accordingly, this Court will evaluate the futility of this motion under the Rule 12(b)(6) standard.").

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The mere theoretical possibility of relief is not sufficient. Rather, plausibility requires factual allegations sufficient to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While the Court accepts well-pleaded factual allegations as true, legal conclusions are not entitled to that assumption. *Iqbal,* 556 U.S. at 678; *Wag More Dogs, LLC v. Cozart,* 680 F.3d 359, 365 (4th Cir. 2012) (a court "need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments") (internal quotation marks omitted).

Virginia statutory business conspiracy claims are subject to heightened pleading standards, akin to fraud, and must be proved by clear and convincing evidence. *See, e.g.*, *AWP Inc. v. Commonwealth Excavating, Inc.*, No. 5:13cv31, 2013 U.S. Dist. LEXIS 103881, at *9 (W.D. Va. July 24, 2013) (must be pled with particularity); *Williams v. Dominion Tech. Partners, L.L.C.*, 576 S.E.2d 752, 757 (Va. 2003) (clear and convincing evidence required).

## ARGUMENT AND AUTHORITIES

### A. Plaintiffs' Motion For Leave To Amend Should Be Denied Because The Proposed Claims Against Steemit Are Futile.

The motion should be denied because the proposed claims are futile. Plaintiffs do not and cannot allege a plausible conversion or statutory business conspiracy claim against Steemit.

9

In addition, the proposed amendment is futile because all claims related to the Disputed Steem – other than the pending interpleader action – should be enjoined pursuant to 28 U.S.C. § 2361.

### 1. Plaintiffs Have Not Alleged A Conversion Claim Against Steemit.

It is undisputed that Steemit has not possessed or controlled the Disputed Steem since the May 20, 2020 hack.  Instead, Plaintiffs attempt to convert ***Steemit's claim of ownership*** – in the pendency of an interpleader action – into a basis for a conversion claim.  ECF No. 74-1, ¶ 21. No support is offered for that radical proposition, which would undermine the very rationale for interpleader, and would work a serious chilling effect on potential claimants.

Plaintiffs' conversion claim fails for additional reasons.  "In general, a cause of action for conversion applies only to tangible property."  *United Leasing Corp. v. Thrift Ins. Corp.*, 440 S.E.2d 902, 906 (Va. 1994).  For intangible property rights, the Supreme Court of Virginia "has refused to recognize a conversion claim for interference with ***undocumented*** intangible property rights.  Only a clear, definite, undisputed, and obvious property right in a thing to which [the plaintiffs] are entitled to immediate possession [is] sufficient to support a claim for conversion."  *Mackey v. McDannald*, 842 S.E.2d 379, 387 (Va. 2020) (quotation and internal citation omitted) (emphasis in original) (brackets in original).

Here, Plaintiffs have not alleged a documented right to the Disputed Steem – which as a digital currency is intangible property – much less one that is clear, definite, undisputed, and obvious.  Nor could Plaintiffs do so, as the Disputed Steem was stolen from the @commuity321 wallet which Steemit (not Plaintiffs) controlled.  Instead, the rightful owner to the Disputed Steem should be adjudicated by the Court in the interpleader action.[11]

---

[11] No allegations support Plaintiffs' related claim for punitive damages in connection with conversion.

### 2. Plaintiffs Have Not Alleged A Statutory Business Conspiracy Claim Against Steemit.

Plaintiffs' statutory business conspiracy claim fails on multiple, fundamental levels.[12]

*First*, all but one of the Plaintiffs are individuals.[13] Virginia Code §§ 18.2-499 and 500 are known as Virginia's "**business** conspiracy statute." *See, e.g.*, *Shirvinski v. United States Coast Guard*, 673 F.3d 308, 321 (4th Cir. 2012) (emphasis added). Section 18.2-499(A) states that "[a]ny two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business or profession" shall be criminally liable. Va. Code § 18-2-499(A). Section 18-2-500(A) then provides for parallel civil liability. Va. Code § 18-2-499(A). "Despite its broad language, it is well-settled that this statute applies only to injuries 'to business and property interests, not to personal or employment interests.'" *Shirvinski*, 673 F.3d at 321 (quoting *Andrews v. Ring*, 585 S.E.2d 780, 784 (Va. 2003)). Accordingly, no individual Plaintiffs can allege a business conspiracy claim.[14]

*Second*, statutory business conspiracy claims must sufficiently "allege an unlawful act or an unlawful purpose." *Station #2 v. Lynch*, 695 S.E.2d 537, 541 (Va. 2010) (quoting *Hechler*

---

[12] It is unclear why the Virginia business conspiracy statute would apply to an alleged conspiracy between a Texas based company (Steemit) and a Washington based company (Bittrex). Because Plaintiffs' claim is futile for numerous other reasons, Steemit will not address that choice of law issue here, reserving all rights to challenge the same in the future.

[13] The status of BlockTrades – the sole non-individual Plaintiff – is unclear in light of the Court's Order to Show Cause. *See* ECF Nos. 72 and 76. Lack of diversity citizenship jurisdiction may be another reason the proposed amended complaint is futile. *See* Fed. R. Civ. P. 12(b)(1).

[14] Even if BlockTrades could be considered for purposes of this claim, not a single allegation is offered on the face of the Complaint (original or as proposed amended) to support the notion that BlockTrades' business or trade interests are implicated here. Rather, according to a declaration submitted by Mr. Notestein, he claims to be the "owner of the Steem and Steem-backed Dollars that were . . . placed in the community 321 account." ECF No. 20-1, ¶ 6. He goes on to makes the questionable claim those shares were owned "personally and in my capacity as President and as one of the beneficial owners of BlockTrades." *Id*. That self-serving characterization is far from proof that BlockTrades held any interest in the Disputed Steem, much less a business interest implicating Virginia's statutory conspiracy laws.

11

*Chevrolet v. General Motors Corp.*, 337 S.E.2d 744, 748 (Va. 1985)).  Indeed, "[t]here can be no conspiracy to do an act which the law allows."  *Hechler Chevrolet*, 337 S.E.2d at 748; *see also Dunlap v. Cottman Transmission, Sys., LLC*, 754 S.E.2d 313, 317 (Va. 2014) (same).  Here, all that Plaintiffs allege Steemit has done wrong is make a claim to the Disputed Steem during the pendency of an interpleader action. ECF No. 74-1, ¶ 21.  That is plainly lawful.

*Third*, the heart of any conspiracy claim is concerted action between two or more defendants.  *See, e.g.*, *Livia Props., LLC v. Jones Lang LaSalle Ams., Inc.*, No. 5:14cv53, 2015 U.S. Dist. LEXIS 103987, at *30 (W.D. Va. Aug. 7, 2015) ("[C]ommon design is the essence of the conspiracy.  Conspiracy is not established simpl[y] by lumping the defendants altogether because the heart of conspiracy is an agreement and a conscious decision by each defendant to join it.") (brackets in original) (internal citations and quotations omitted).  Bittrex and Steemit do not have a common interest or purpose with respect to the Disputed Steem.  Bittrex is a disinterested stakeholder; Steemit has made a claim to the Disputed Steem.  Bittrex did not transfer the Disputed Steem to Steemit, but filed an action in interpleader.  Plaintiffs' contrived conspiracy has not been alleged with particularity and is facially implausible.

>   3.   **Plaintiffs' Proposed Amendment Is Futile Because The Court Should Enjoin It Under 28 U.S.C. § 2361.**

In a statutory interpleader action, the Court "may issue its process for all claimants and enter its order restraining them from instituting or prosecuting ***any proceeding*** in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court."  28 U.S.C. § 2361 (emphasis added).  This makes good sense.  The statute protects not only the interpleader stakeholder, but a competing claimant from having to defend against a multiplicity of proceedings "affecting" the property involved in the interpleader action.  *Id*.

Bittrex has already requested that the Court enter a § 2361 injunction in light of Plaintiffs' refusal to dismiss the original Complaint. *See, e.g.*, ECF No. 61 at 17; ECF No. 65 at 10-11. Given that Plaintiffs now attempt to assert the same meritless claims against Steemit, Steemit likewise requests that the Court issue a § 2361 injunction.

**B.     Plaintiffs' Motion Should Also Be Denied Because They Acted In Bad Faith.**

In addition to futility, the motion for leave to amend should be denied because Plaintiffs have acted in bad faith. Despite their "suspicions" that Steemit would make a claim to the disputed Steem, Plaintiffs did not sue Steemit in the original Complaint. Nor did they seek to amend one month later, when Bittrex responded to the lawsuit and initiated the interpleader action, naming Steemit as a claimant. By August 19, 2020, Bittrex had amended its action in interpleader, now expressly representing to the Court (and Plaintiffs) that Steemit intended to make a claim to the Disputed Steem when it responded to the lawsuit. ECF No. 21 at 11, ¶ 24. Bittrex made the same representation six days later (ECF No. 23 at 2), attaching a letter from Steemit's counsel (ECF No. 23-3). On September 22, 2020, Steemit formally appeared in this action and made a claim to the Disputed Steem. ECF No. 28.

Thus, for almost a year, Plaintiffs did nothing despite actual knowledge that Steemit claimed an ownership interest in the Disputed Steem. Only after the Court raised concerns about a "John Doe" Defendant, and Plaintiffs faced the very real possibility that their claims would be dismissed, did Plaintiffs decide to take action. Under these circumstances, the amendment does not appear to be the byproduct of diligent and good faith advocacy.

Plaintiffs also seek to file these new claims after: (1) agreeing that interpleader was proper as to the Disputed Steem; and (2) being well aware from Bittrex's briefing that claims related to the subject property of an interpleader action should not proceed.

Under these circumstances, Steemit submits that denial is also appropriate because Plaintiffs are not proceeding in good faith.

## CONCLUSION

For the foregoing reasons: (1) Plaintiffs' motion for leave to file an amended complaint should be denied; (2) the Court should issue an order under 28 U.S.C. § 2361 enjoining Plaintiffs from instituting any further proceedings regarding the Disputed Steem; (3) Steemit should be awarded reasonable costs and attorneys' fees incurred in responding to this motion, per Virginia Code § 18-2-500(B); and (4) the Court should grant such other relief as it deems just and proper.

Dated:   June 28, 2021                    Respectfully submitted,

        **STEEMIT, INC.**

By:  /s/ Michael J. Finney

    Michael S. Dicke (Cal. Bar No. 158187)
    *(admitted pro hac vice)*
    Catherine Kevane (Cal. Bar No. 215501)
    *(admitted pro hac vice)*
    Jennifer C. Bretan (Cal. Bar. No. 233475)
    (*admitted pro hac vice*)
    Casey O'Neill (Cal. Bar No. 264406)
    (*admitted pro hac vice*)
    FENWICK & WEST LLP
    555 California Street, 12th Floor
    San Francisco, CA 94114
    Telephone: (415) 875-2300
    Fax: (415) 281-1350
    mdicke@fenwick.com
    ckevane@fenwick.com
    jbretan@fenwick.com
    coneill@fenwick.com

    Michael J. Finney (VSB No. 78484)
    GENTRY LOCKE
    10 Franklin Road S.E., Suite 900
    P.O. Box 40013
    Roanoke, Virginia 24022-0013
    Phone: (540) 983-9300
    Fax: (540) 983-9400
    finney@gentrylocke.com

    *Counsel for Steemit, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of June 2021, a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system, which provided electronic service to all counsel of record.

/s/ Michael J. Finney