IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DANIEL NOTESTEIN, BLOCKTRADES INTERNATIONAL, LTD., ANDREW CHANEY, SZYMON LAPINSKI, ADAM DODSON, ELMER LIN, DANIEL HENSLEY, MICHAEL WOLF, MATHIEU GAGNON, and MARTIN LEES,<br><br>    Plaintiffs/Counter-Defendants,<br><br>v.<br><br>BITTREX, Inc.,<br><br>    Defendant/Counter-Plaintiff,<br><br>JOHN DOES,<br><br>    Defendant,<br><br>and<br><br>STEEMIT, Inc.,<br><br>    Third-Party Defendant. | Civil Action No. 7:20-cv-00342<br><br>By: Elizabeth K. Dillon<br>    United States District Judge |

**MEMORANDUM OPINION**

This action relates to a dispute over the ownership of Steem cryptocurrency. Before the court is Bittrex, Inc.'s motion for interpleader bond and judgment of interpleader pursuant to 28 U.S.C. § 1335 (Dkt. No. 60) and plaintiffs' subsequent motion for leave to amend their complaint to replace the John Doe defendants with Steemit, Inc. (Dkt. No. 74).

At the hearing regarding interpleader, the court expressed its concern about the possible lack of subject matter jurisdiction over plaintiffs' complaint against Bittrex and unidentified John Does. The court issued an order to show cause as to why this matter should not be dismissed for

lack of subject matter jurisdiction. (Dkt. No. 72.) The parties' responses to the court's order to show cause have been received.

For the reasons stated below, the court concludes that it may retain jurisdiction over this matter. Further, the court will grant Bittrex's motion for interpleader and grant in part and deny in part plaintiffs' motion for leave to amend.

## I.  BACKGROUND

### A. Parties and Claims

Plaintiffs include BlockTrades International, Ltd., and Daniel Notestein, the President of BlockTrades. The remaining plaintiffs are Andrew Chaney, Szymon Lapinski, Adam Dodson, Elmer Lin, Daniel Hensley, Michael Wolf, Mathieu Gagnon, and Martin Lees. Plaintiffs' claims against Bittrex are for breach of bailment, conversion, business injury, and injunctive relief. (*See* Compl., Dkt. No. 1.)

Plaintiffs are counter-defendants to the interpleader counterclaim brought by Bittrex, Inc. (Dkt. No. 21.) Bittrex also brought a third-party claim against Steemit, Inc. (*Id.*)

### B. Bittrex

Bittrex is a Washington-based cryptocurrency exchange platform. (Declaration of Julian Yap (Yap Decl.) ¶ 10, Dkt. No. 15-1.) A cryptocurrency exchange business allows customers to trade cryptocurrencies for other assets, such as fiat money or other cryptocurrencies. Bittrex is one of the largest U.S.-based cryptocurrency exchanges. It was founded by three cybersecurity professionals, and, as a result, Bittrex's wallet infrastructure has been designed with security in mind.

Customers create Bittrex accounts and undergo identity verification. Once customers have created their accounts and had their identities verified, customers send cryptocurrency to a

Bittrex-controlled deposit address (one in which Bittrex controls the address's private keys). If a deposit is successful, Bittrex credits the customer's account with the appropriate amount of cryptocurrency. The customer can use that balance to trade the cryptocurrency for another type of cryptocurrency or, in certain markets, fiat currency.

To mitigate the risk of unauthorized account access, Bittrex has implemented a number of security measures. For example, Bittrex requires customers to verify various actions before they can access their accounts, generally blocks unknown IP addresses from accessing customer accounts, and offers application-based two factor authentication which, if enabled, requires customers to input a rotating code generated by a third-party application to gain access to their accounts, in addition to supplying the email address and password associated with the account.

**C. Steem Dispute**

Steem and Steem-Backed Dollars (SBD) are two of many cryptocurrencies traded on Bittrex's exchange. Third-party defendant Steemit, Inc., owns Steemit, a blockchain-based blogging and social media platform. Steemit users are rewarded with the cryptocurrency Steem and/or Steem-Backed Dollars for publishing and creating content.

In early 2020, the TRON Foundation (or Steemit Ltd. and not TRON according to Steemit, Inc.) and Steemit engaged in a transaction by which the TRON Foundation gained control of the Steemit social media and blogging platform. (Yap Decl. ¶ 17.) The transaction caused various conflicts among holders of Steem-related cryptocurrency. In May 2020, these conflicts culminated in a "hard fork," meaning a change in the rules governing the Steem "blockchain." (*Id.*) In the cryptocurrency community, the "hard fork" was considered contentious, as it transferred the Steem and Steem-Backed Dollars held by certain Steem

accounts to a Steem account named "community321." Bittrex was generally aware of this conflict but was not involved in the conflict itself.

On May 20, 2020, following the "hard fork," an unknown person purporting to be a "white knight hacker" transferred 23,627,501 Steem and 427 Steem-Backed Dollars from the "community321" account into Bittrex's Steem wallet. This wallet serves as a holding account for Steem and Steem-Backed Dollars held on Bittrex's exchange by Bittrex customers. The unknown "white knight hacker" instructed Bittrex to return the cryptocurrency to its original owners but did not provide an identifying memorandum by which Bittrex could link the funds to a particular Bittrex account. It is unclear whether the "white knight hacker" engaged in criminal activity in obtaining the funds from the "community321" account.

In May and June 2020, plaintiffs informed Bittrex that they were the owners of a portion of the Steem and/or Steem-Backed Dollars transferred from the "community321" account to the Bittrex Steem wallet. (Declaration of Kevin Hamilton (Hamilton Decl.) ¶¶ 3–5, Dkt. No. 15-2.) Plaintiffs asked Bittrex to return that portion of the Steem and/or Steem-Backed Dollars to them.

However, Bittrex's counsel corresponded with counsel for Steemit, who instructed Bittrex not to release the Disputed Steem to plaintiffs. (Declaration of Claire Martirosian (Martirosian Decl.) ¶ 2, Dkt. No. 15-3.) Steemit's counsel informed Bittrex that the Disputed Steem was stolen by the "white knight hacker," and plaintiffs were potentially involved in or connected to the actions of the hacker. Steemit asserts a claim to the Disputed Steem.

Because the Disputed Steem was transferred as a result of the actions of a purported hacker, and there is a dispute as to whether or not the Disputed Steem was stolen, Bittrex informed plaintiffs that it would not release the Disputed Steem until it receives a settlement agreement signed by all parties asserting a claim to the Disputed Steem, or a valid and final court

order or order from law enforcement directing release of the Disputed Steem. Bittrex does not assert any claim to the Disputed Steem. Bittrex asserts that it is ready and willing to give the Disputed Steem to the person or persons entitled to it, but it is unable to determine who owns the Disputed Steem without potentially exposing itself to double or multiple liability.

### D. Amount and Value of Steem in Dispute

Plaintiffs have informed Bittrex that their calculation of the amount of Steem in dispute amounts to 8,752,313.006 Steem and 294.207 Steem-Backed Dollars. Plaintiffs have calculated the total value of the Disputed Steem to be $3,940,276.70. (Ex. B, Dkt. No. 62-1.) Bittrex has not confirmed the amounts in dispute but accepts plaintiffs' calculations as true for purposes of its proposed Interpleader Bond.

## II. ANALYSIS

### A. Subject Matter Jurisdiction

At the outset, the court notes that its subject matter jurisdiction over Bittrex's interpleader complaint is not affected by the court's jurisdiction, or lack thereof, over plaintiffs' complaint against Bittrex. Bittrex is asserting statutory interpleader under 28 U.S.C. § 1335 via a compulsory counterclaim. District courts have original jurisdiction over interpleader actions if (1) the amount in dispute exceeds $500, (2) there are two or more adverse claimants of diverse citizenship, and (3) the interpleader plaintiff deposits the money or property in dispute into the registry of the court or posts an adequate bond. § 1335(a). In other words, Section 1335 "require[s] only minimal diversity, that is, diversity of citizenship between two or more claimants, without regard to the circumstance that other rival claimants may be co-citizens." *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530 (1967) (internal quotation marks and citation omitted).

The court has jurisdiction over Bittrex's interpleader counterclaim because: (1) Bittrex has possession of the Disputed Steem, which plaintiffs allege has a value in excess of $500; (2) there are at least two adverse claimants of diverse citizenship—plaintiffs are residents of Virginia, Louisiana, and various foreign jurisdictions (Compl. ¶¶ 1–10, Dkt. No. 1), and Steemit is a Delaware corporation with its principal place of business in Austin, Texas (Interpleader Counterclaim and Third-Party Claim ¶ 13, Dkt. No. 21); and (3) Bittrex is prepared to post a bond in the amount of $3,940,376.70. *See, e.g.*, *Banner Life Ins. Co. v. Jones*, No. 2:11CV63, 2011 WL 4565352, at *7 (E.D. Va. Sept. 29, 2011) (requirements of statutory interpleader met where "Banner Life has asserted that it stands ready to deposit the $100,000 in Policy proceeds with the Court, which is required under 28 U.S.C. § 1335, although not under Rule 22"). Moreover, dismissal of plaintiffs' complaint would not impact the court's jurisdiction over Bittrex's interpleader counterclaim. *See, e.g.*, *Peerless Ins. Co. v. United States*, 674 F. Supp. 1202, 1206 (E.D. Va. 1987) ("[D]espite the dismissal of Peerless' declaratory judgment action, the Court can adjudicate the United States' counterclaim because an independent basis exists for federal jurisdiction.").

Regarding plaintiffs' complaint against Bittrex, the court's order to show cause highlighted two possible issues. First, the court noted that the citizenship of plaintiff Blocktrades International, Ltd., is unclear. The complaint states that Blocktrades is a registered company in the Cayman Islands. For purposes of ascertaining the court's diversity jurisdiction, the complaint lacks information as to whether this entity is akin to a corporation, a limited liability company or partnership, or none of the above. *See, e.g.*, *Horne v. Krecker*, Cause No.: 2:20-CV-71-TLS-JPK, 2020 WL 814007, at *1–2 (N.D. Ind. Feb. 19, 2020) (discussing citizenship of Canadian company Impel Transport, Ltd.).

In response to the order to show cause, BlockTrades has provided its certificate of incorporation in the Cayman Islands. (Dkt. No. 73-1.) Also in response, Steemit has provided a copy of a BlockTrades trademark application which identifies its entity type as a limited liability company. (Dkt. No. 76-1.) Donna Mitchell, the Secretary/Treasurer of BlockTrades, clarifies that when she prepared this trademark application, she mistook limited liability company for limited liability entity. (Declaration of Donna Mitchell (Mitchell Decl.) ¶ 5, Dkt. No. 80-1.) BlockTrades is not a limited liability company, it is a Cayman Islands corporation with its principal place of business in Blacksburg, Virginia. (*Id.* ¶¶ 4–6.) Thus, the court is satisfied that BlockTrades is a citizen of Virginia and the Cayman Islands for purposes of diversity jurisdiction. *See* 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."). There is complete diversity between the plaintiffs and Bittrex because Bittrex is a Delaware corporation with its principal place of business in Seattle, Washington, and none of the plaintiffs are citizens of Delaware or Washington.

Second, the court was concerned about the John Doe defendants. Subject to certain exceptions, unidentified John Doe defendants are not permitted in federal diversity suits because diversity jurisdiction must be proved by the plaintiff rather than assumed. *See Howell v. Tribune Entertainment Co.*, 106 F.3d 215, 218 (7th Cir. 1997). In response to the order to show cause, plaintiffs argue that the anonymous defendants named in their complaint are nominal parties who can be dropped from the case to preserve diversity jurisdiction. "Courts frequently employ Rule 21 to preserve diversity jurisdiction over a case by dropping a nondiverse party if the party's presence in the action is not required under Rule 19." *Bowers v. State Farm Mut. Auto. Ins. Co.*, 1:17CV825, 2017 WL 6389705, at *3 (M.D.N.C. Dec. 14, 2017) (quoting 7 Charles Alan Wright

& Arthur R. Miller, Fed. Practice & Procedure § 1685 (3d ed. 2017)). Six days after responding to the order to show cause, plaintiffs moved for leave to amend their complaint to substitute Steemit for any John Doe defendants. It is now readily apparent that plaintiffs know the identities of the parties they wish to sue—Bittrex and Steemit. The John Doe defendants have no place in this lawsuit, and they can be dismissed.

Based on the foregoing, the court finds that it has subject matter jurisdiction over plaintiffs' complaint against Bittrex, and the court will issue an order dismissing the John Doe defendants. The court will separately address plaintiffs' motion for leave to file an amended complaint.

**B. Interpleader Deposit**

As noted above, the court has jurisdiction over Bittrex's interpleader counterclaim. Bittrex asks the court to enter an order: (1) granting Bittrex's motion for approval to post a bond in the amount of $3,947,376.70 in place of cash or other property deposited into the court registry to secure Bittrex's obligations with respect to the Disputed Steem claimed by plaintiffs; (2) approving the form of Bittrex's proposed interpleader bond; (3) directing Bittrex to release and return the Undisputed Steem to third-party defendant Steemit;[1] (4) discharging Bittrex with prejudice from all liability arising out of or in connection with the Disputed Steem claimed by plaintiffs and releasing Bittrex from further participation in this action; (5) ordering that Bittrex remain subject to the court's jurisdiction for purposes of effectuating the interpleader remedy and following the court's ultimate direction regarding disbursement of the Disputed Steem claimed

---

[1] In addition to the Disputed Steem, Bittrex represents that there is a portion of the Steem held in Bittrex's Steem wallet that is undisputed—approximately 14,468,436 units of Steem and 130.251 Steem-Backed Dollars that have not been claimed by plaintiffs or any claimant other than Steemit. Bittrex understands that once the Undisputed Steem has been returned to Steemit, Steemit will have no objection to Bittrex's discharge from this litigation. (Dkt. No. 65 at 7.)

by plaintiffs; (6) enjoining all persons or parties from instituting against Bittrex any action or further prosecuting any existing action in any state court or in any Court of the United States or in any tribunal arising from, relating to, or concerning the Disputed Steem claimed by plaintiffs; and (7) awarding Bittrex reasonable attorney's fees and costs associated with this motion from plaintiffs. (Dkt. No. 65 at 13–14.)

Regarding the merits of interpleader, the "primary test for determining the propriety of interpleading the adverse claimants . . . is whether the stakeholder legitimately fears multiple litigation over a single fund." *Reliastar Life Ins. Co. of N.Y. v. LeMone*, No. CIV.A. 7:05CV00545, 2006 WL 733968, at *2 (W.D. Va. Mar. 16, 2006). The stakeholder should not be compelled to run the risk of guessing which claimant should be the beneficiary of a contested fund. *Id.* (citing 7 Wright & Miller, *supra*, § 1702). Ordinarily, the court may discharge the stakeholder after determining that interpleader is available and that the stakeholder is disinterested. *Id.* Interpleader should be a "simple, speedy, efficient and economical remedy." *Id.* at *3 (quoting *Lewis v. Atl. Rsch. Corp.*, No. 98-0070H, 1999 U.S. Dist. LEXIS 13569, at *24 (W.D. Va. Aug. 30, 1999)). In any action under § 1335, the court may "issue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court." 28 U.S.C. § 2361.

Here, plaintiffs and Steemit are adverse claimants to the Disputed Steem. Bittrex has met its minimal burden of demonstrating that it has a "real and reasonable fear of exposure to double liability or the vexation of conflicting claims." *Michelman v. Lincoln Nat. Life Ins. Co.*, 685 F.3d 887, 894 (9th Cir. 2012); *see also Aaron v. Mahl*, 550 F.3d 659, 663 (7th Cir. 2008) (stakeholder is only required to demonstrate that the adverse claim has a "minimal threshold

9

level of substantiality"). Bittrex is experiencing multiple litigation related to the Disputed Steem: plaintiffs' complaint against Bittrex, and Bittrex's third-party complaint against Steemit. Bittrex makes no claim to the Disputed Steem; it simply wants the court to instruct Bittrex as to which claimant is the rightful owner. This is the situation for which discharge of an interpleader plaintiff is warranted.

> The principle of interpleader is that, where two persons are engaged in a dispute, and that which is to be the fruit of the dispute is in the hands of a third party, who is willing to give it up according to the result of the dispute, then . . . that third person . . . is not to be obliged to be at the expense and risk of defending an action; but, on giving up the thing . . . he is to be relieved, and the Court directs that the persons between whom the dispute really exists shall fight it out at their own expense.

*Equitable Life Assurance Soc'y v. Jones*, 679 F.2d 356, 358 n.2 (4th Cir. 1982).

Plaintiffs do not object to interpleader as a general matter. Plaintiffs also agree to the proper amount of the bond. Plaintiffs do, however, argue that Bittrex should not be allowed to use interpleader to excuse its tortious behavior. Plaintiffs argue that Bittrex ignored their requests for the return of their property. Plaintiffs also maintain that the imposition of a permanent injunction would presume that their claims against Bittrex lack merit. At the hearing, plaintiffs focused upon their desire to keep Bittrex in the case for discovery purposes.[2] Of

---

[2] In plaintiffs' briefing with respect to their motion for leave to file an amended complaint, but not in opposition by brief or at the hearing to the interpleader motion, plaintiffs argue that it would be unfair to accept the factual assertions of Bittrex and Steemit and dismiss this action without the opportunity for discovery. The court notes that interpleader usually proceeds in two stages. First, the court determines whether the interpleader plaintiff has properly invoked interpleader. Once the interpleader plaintiff is discharged, the case then proceeds in the second stage "via normal litigation processes, including pleading, discovery, motions, and trial." *Allstate Life Ins. Co. v. Ellett*, Civil Action No. 2:14cv372, 2015 WL 500171, at *2 (E.D. Va. Feb. 4, 2015). Thus, the lack of discovery in the case thus far, or Bittrex's use of declarations to support its motion for interpleader, is not improper. Nor do plaintiffs point to any equitable concerns arising from the lack of discovery in this matter thus far. *See, e.g.*, *Am. Gen. Life Ins. Co. v. Brown*, Docket No. 3:20-cv-00394-FDW-DSC, 2021 WL 535057, at *3 (W.D.N.C. Feb. 12, 2021) ("The Court sees no reason why a scheduling order and discovery cannot occur in this case after Plaintiff is discharged, and Defendants have not persuaded the Court otherwise. Accordingly, the Court does not find that any equitable concerns, including the current lack of discovery, prevent the use of interpleader relief.").

course, discovery is still available from discharged parties and from entities that have never been party to the litigation.

The problem with plaintiffs' arguments is that they directly contradict plaintiffs' concession about the appropriateness of interpleader. Plaintiffs concede, for example, that Bittrex does not have any claim to the Disputed Steem. It follows, therefore, that Bittrex is entitled to the relief that results from properly invoking interpleader: discharge from liability and an injunction against further adverse proceedings. Plaintiffs' claims are not separate and apart from the Disputed Steem; they all relate to the disputed ownership, and Bittrex's possession, of the Disputed Steem. *See, e.g.*, Compl. ¶¶ 25–26 ("The actions of Bittrex, Inc., in withholding both the information and the property, have already resulted in significant financial loss to the Plaintiffs," and Plaintiffs therefore "request an injunction compelling Bittrex, Inc. to release the Steem to their designated accounts immediately"); 28 ("The refusal of Bittrex, Inc. to release the Steem or identify the other parties who have made claims against the Steem constitutes intentional or wrongful breach of bailment."); 30 ("The actions of both Defendants, jointly and severally, in exercising or assuming authority over the property of Plaintiffs, constitute wrongful conversion."). Bittrex cannot be held liable for retaining funds and not picking a winner when there is a disputed claim. *See, e.g.*, *Reese v. Sun Life Assurance Co. of Canada*, 483 F. Supp. 3d 407, 411 (W.D. Tex. 2020) (holding that claims for breach of contract and insurance code violations were barred by interpleader because "the factual allegations underlying those claims are based on nothing more than" the disinterested stakeholder's "failure to resolve its investigation" in favor of the interpleader defendant and "pay out the insurance benefits to her"); *Lutheran Bhd. v. Comyne*, 216 F. Supp. 2d 859, 862–63 (E.D. Wis. 2002) (holding that a valid interpleader action shields a plaintiff from liability from counterclaims where those

11

counterclaims "are essentially based on the plaintiff's having opted to proceed via an interpleader complaint rather than having chosen from among competing adverse claimants").

Plaintiffs also argue Bittrex somehow manufactured the dispute between plaintiffs and Steemit. To the contrary, in the period between receiving the Disputed Steem and filing for interpleader, Bittrex was doing its due diligence to discover who the adverse claimants were, the nature of their claim to the Disputed Steem, and the amount of the Steem actually in dispute. (Supplemental Declaration of Kevin Hamilton (Suppl. Hamilton Decl.) ¶ 8, Dkt. No. 66.) Because the Disputed Steem came into Bittrex's possession due to the contentious "hard fork" and subsequent hack, it was obvious to Bittrex that there would be a dispute over ownership. (*Id.* ¶ 3.) Bittrex did not manufacture the dispute regarding the Disputed Steem.

In sum, Bittrex is entitled to approval of its interpleader bond and judgment of interpleader. The court will enter an appropriate order.

**C. Attorney's Fees and Costs**

Attorney's fees and costs "may be awarded to a stakeholder in an interpleader action based on the rationale that the stakeholder, by seeking resolution of the multiple claims to the proceeds, benefits the claimants, and should not have to absorb attorneys' fees in avoiding the possibility of multiple litigation." *Sun Life Assurance Co. of Canada v. Bew*, 530 F. Supp. 2d 773, 775 (E.D. Va. 2007) (cleaned up). Factors to consider include:

> (1) whether the case is simple; (2) whether the stakeholder performed any unique services for the claimant or the court; (3) whether the stakeholder acted in good faith and with diligence; (4) whether the services rendered benefitted the stakeholder; and (5) whether the claimants improperly protracted the proceedings.

*Metropolitan Life Ins. Co. v. Barretto*, 178 F. Supp. 2d 745, 751–52 (S.D. Tex. 2001) (citing 7 Wright & Miller, *supra*, § 1719).

Bittrex does not seek fees associated with its prior, unsuccessful motion to deposit cryptocurrency. (*See* Dkt. Nos. 14, 57.) Bittrex only seeks costs and fees associated with the instant motion for interpleader deposit. Bittrex also does not seek fees from Steemit because, unlike plaintiffs, Steemit did not force Bittrex to litigate the interpleader issue.

Plaintiffs argue that Bittrex should not be entitled to attorneys' fees because it made no effort to resolve the case or make the parties aware of the identity of other claimants. Plaintiffs also complain that Bittrex protracted these proceedings because it took them nine months to satisfy the requirements of statutory interpleader. For the reasons already outlined, the court does not agree that Bittrex acted in bad faith or improperly protracted these proceedings. Rather, Bittrex performed unique services for the court by identifying the known claimants and facilitating the use of a bond for the Disputed Steem. Also, it was plaintiffs who protracted these proceedings by pursuing baseless claims against Bittrex and forcing Bittrex to litigate interpleader.

Based on the foregoing, the court will award fees and costs to Bittrex for its costs and fees associated with the motion for interpleader deposit, against plaintiffs only.

**D. Plaintiffs' Motion for Leave to File an Amended Complaint**

Plaintiffs have moved for leave to amend their complaint to substitute Steemit, Inc., for the John Doe defendants. (Dkt. No. 74.) The proposed amended complaint also reasserts the same claims against Bittrex. As to the John Doe defendants, the complaint merely notes them as persons asserting a claim to the Disputed Steem and SBD. A plaintiff may amend the complaint once as a matter of course, subject to certain conditions not applicable here. Fed. R. Civ. P. 15(a)(1). A plaintiff may subsequently amend with permission from the court, which "shall be freely granted when justice so requires." Fed. R. Civ. P. 15(a)(2). The Fourth Circuit has

interpreted Rule 15(a) such that "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (internal quotation marks and citation omitted). Leave to amend is futile when the amended complaint would not survive a motion to dismiss. *Save our Sound OBX, Inc. v. N.C. Dep't of Transp.*, 914 F.3d 213, 228 (4th Cir. 2019).

Plaintiffs argue that amending their complaint to substitute Steemit for the John Doe Defendants is appropriate because they did not know Steemit was asserting a claim to the Disputed Steem at the outset of this litigation. Plaintiffs' claims against Steemit in its proposed amended complaint are for conversion and injury to business or trade. (Proposed Am. Compl., Dkt. No. 74-1.) Nothing prevents competing claimants in an interpleader action from having separate claims against each other in that action. Plaintiffs allege that Steemit stole their property, moved it to a location chosen by Steemit, and then interfered with the lawful return of plaintiffs' property. (*See id.* ¶¶ 15–17.) Thus, the amended complaint is not futile regarding a claim of conversion against Steemit. Therefore, the court will grant leave to amend to the extent that plaintiff has pleaded a conversion claim against Steemit.

The court agrees, however, that the proposed amended complaint is insufficient to state a claim against Steemit for plaintiffs' business conspiracy claim to the extent it fails to allege a plausible conspiracy claim by insufficiently alleging concerted action. Thus, the motion to amend is futile in that regard and will be denied without prejudice as to that claim. The motion will also be denied to the extent it seeks to restate claims against Bittrex.

## III.  CONCLUSION

Finding that the court may exercise subject matter jurisdiction and for the above-stated reasons, the court will grant Bittrex's motion for interpleader deposit and judgment of interpleader, (Dkt. No. 60), approve the bond and direct its posting, order release and return of the undisputed Steem to Steemit, award Bittrex attorneys' fees and costs from plaintiffs, and discharge Bittrex.  The court will also grant in part and deny in part plaintiffs' motion for leave to file an amended complaint.  (Dkt. No. 74).  Further, the court will dismiss the John Doe Defendants from this action.  The court will issue an appropriate order.

Entered: March 30, 2022.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge